Ruth HETZEL, Plaintiff-Appellant,

v.

JEWEL COMPANIES, Inc., Defendant-Appellee.

No. 71-1009.

United States Court of Appeals, Seventh Circuit.

March 28, 1972.

Thomas W. Munger, Lafayette, Ind., for plaintiff-appellant.

Joseph T. Bumbleburg, John K. McBride, Cable G. Ball, Warren N. Eggleston, Lafayette, Ind., for defendant-appellee; Ball, Eggleston & Bumbleburg, Lafayette, Ind., of counsel.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

SWYGERT, Chief Judge.

This is an appeal from a judgment entered upon a jury verdict in favor of the defendant in a diversity suit for damages for personal injuries allegedly sustained as a result of plaintiff's slipping on an unknown liquid on the floor and falling in one of defendant's supermarkets. The principal issue raised in this appeal is whether the trial judge properly instructed the jury as to the applicable Indiana law.

The facts upon which this action was predicated are as follows. On the afternoon of September 4, 1967, the plaintiff entered a supermarket operated by the defendant in Lafayette, Indiana. She took a grocery cart as she entered and proceeded through the store, placing groceries in the cart as she went. As she pushed the cart along the aisle in front of the self-service meat counter on the way to obtain some hamburger meat, she slipped on something on the floor and fell, her grocery cart falling on top of her. She was helped up by the butcher, who then cleaned up the clear liquid of unknown derivation and content upon which she had slipped. Plaintiff was taken to the hospital by the store manager. She subsequently had surgery on her foot, which she says was injured in the fall, and has suffered pain and limited utility in her foot and ankle which she also attributes to the fall.

Plaintiff contends that the district court erroneously failed to instruct the jury as to her theory of the case and instructed the jury erroneously as to the applicable Indiana law. Plaintiff's theory of the case was that the liquid on the floor in front of the meat counter probably was there as a result of defendant's method of self-service merchandising of meat. She theorized that packages of poultry or other meats might have leaked to create the wet spot or that condensation forming on the refrigerated packages of meat might have spilled onto the floor or that, in any event, there was a regular and recurrent condition at the location where she fell with regard to the accumulation of liquid of a composition unknown to her which condition defendant had not exercised due care to cure, and she contends that the failure to correct this known condition proximately caused her injury.

The district court's instructions, to which timely objection was made, effec-

tively precluded the jury's consideration of the evidence in accordance with the theory espoused by the plaintiff, since those instructions were incompatible with her theory of the case. The pertinent part of the instructions was as follows:

If there is danger attending the invitee's use of the premises and such danger arises from conditions not readily apparent to the senses, and if the owner has actual knowledge of such conditions, or if such conditions would have been known to an owner in the exercise of ordinary care under the circumstances, the law then imposes upon the owner the duty to give the invitee reasonable warning of such danger.

\*   \*   \*   \*   \*   \*

[T]he owner is entitled to assume that the invitee will see and observe that which would be obvious through reasonably expected use of an ordinary person's own senses. There is no duty to warn of an obvious danger.

Before you can find for the plaintiff because of a defect or condition, if any, of defendant's store, you must be convinced by a preponderance of the evidence that the defendant had actual knowledge of the existence of the defect or condition, or that said defect or condition existed for a long enough time that defendant, in the exercise of reasonable care, should have known of its existence and taken steps to correct the same or warn the plaintiff.

We hold that the trial court's instructions to the jury erroneously stated the applicable Indiana law in two outcome-determinative respects: they precluded a finding that defendant was liable for injuries caused by conditions which, though otherwise negligently existing, were "readily apparent to the senses" of the plaintiff, and they precluded a finding that defendant had constructive notice of the specific condition at issue upon proof that the specific condition was a foreseeable reappearance of a dangerous, recurrent condition of which the defendant had actual notice.

**I**

■ Turning first to the impropriety of the instruction regarding obvious dangers, it is clear that the mere visibility of a dangerous condition does not preclude recovery in negligence under the Indiana tort law. As the Indiana Supreme Court clearly stated with regard to the asserted contributory negligence of an invitee who slipped and fell in a puddle of melted snow in a store, "[T]his court [is not] at liberty to say as a matter of law that the [invitee] was guilty of contributory negligence after she had passed through the revolving door where there was melted snow and water. *Until she had notice to the contrary, she was entitled to assume that the [inviter] had exercised due care for its customers."* Robertson Bros. Dep't Store v. Stanley, 228 Ind. 372, 379–380, 90 N.E.2d 809, 811 (1950) (emphasis added). Indeed, there is no dearth of slip and fall cases in the Indiana law in which recovery was not barred by the fact of the visibility of the injury-causing condition. F. W. Woolworth Co. v. Moore, 221 Ind. 490, 493, 48 N.E.2d 644, 645 (1943); Kroger Co. v. Ward, 267 N.E.2d 189, 190 (Ind. App.1971); Huttinger v. G. C. Murphy Co., 131 Ind.App. 642, 645, 172 N.E.2d 74, 75 (1961); Montgomery Ward & Co. v. Wooley, 121 Ind.App. 60, 64–65, 94 N.E.2d 677, 678–679 (1950).

■ Kroger Co. v. Ward, *supra,* the most recent of the slip and fall cases which have found visibility of the defect insufficient to preclude recovery, dealt with an imminently obvious dangerous condition. In that case, the court described the following circumstances which led to the plaintiff's injury:

[T]he weather on the day of the accident was very inclement with snow falling. The parking lot of the shopping center was covered with snow and slush. The plaintiff Bertha Ward entered the Kroger Store in the late afternoon at the only customer en-

trance through two automatic doors upon which warning signs had been posted by the manager, advising those entering the premises to watch their step. After entering the store a distance of two or three steps the plaintiff fell in a puddle of slushy water, which she saw, that had accumulated on the floor. Kroger Co. v. Ward, 267 N.E.2d at 190.

We fail to see how a dangerous condition of a store could be made materially more obvious. The weather and the condition of the parking lot nearly compelled the expectation of water accumulation near the store entrance. The store had posted warnings at the only entrance available to customers. Moreover, the dangerous water accumulation was not only capable of being seen, but it was actually seen by the plaintiff before her fall. Yet, the Appellate Court of Indiana affirmed a judgment for the plaintiff. Given this state of the Indiana law, it was error for the district court to give an instruction which exempted the defendant from liability for injuries sustained as a result of obvious dangers on the premises.

## II

■■ The defendant contended, and the district court agreed, that the liability of the defendant was contingent upon defendant's actual or constructive knowledge of the existence of the specific condition which caused plaintiff's injury and that proof of such knowledge required proof of the following: (1) that defendant's agents placed the liquid on the floor; or (2) that a third party placed the liquid on the floor and defendant's agents knew it was there; or (3) that a third party placed the liquid on the floor and that it had remained there for such a length of time that defendant should have discovered it in the exercise of reasonable care. The court's instructions, which adopted the defendant's theory as to the notice requisite to liability, thus placed upon the plaintiff a heavier burden of proof than is justified by the Indiana law. We believe that proof of constructive notice to a possessor of land

of the existence of a dangerous condition is properly accomplished where it is shown that the specific condition at issue, though transitory, is a part of a known and continuing or recurrent condition. In F. W. Woolworth Co. v. Moore, *supra,* at 496, 48 N.E.2d at 646, the Indiana Supreme Court said:

> The proprietor of a store cannot shut his eyes to a dangerous condition of the premises and then escape liability on the ground that he did not know of the danger. As said by this court in Great Atlantic & Pacific Tea Co. v. Custin, [214 Ind. 54, 13 N.E.2d 542, 14 N.E.2d 538 (1938)], in speaking of an injury caused by a defective fixture: "The injury was sustained in appellant's store where its employee should have notice of existing conditions." This is certainly true of a dangerous condition of the premises which could have been discovered by a reasonable inspection.

By the same token, a storekeeper who knows of the existence of a recurrent condition which poses a potential danger to invitees may not ignore that knowledge and fail reasonably to respond to the foreseeable danger posed by the likelihood of recurrence. In the instant case, the plaintiff slipped and fell on an unknown liquid on the floor of defendant's store immediately in front of the self-service meat counter. The co-manager of defendant's store who was on duty the day of the accident described the weather that day as being clear and warm. He also testified as follows:

Q. Has anybody ever mentioned or are you aware of the fact that things do leak out of the packages of meat counter [*sic*] on to the floor?

A. Yes.

Q. Are you aware of that?

A. Yes.

Q. This has happened on more than one occasion?

A. Yes.

Q. It's something you attempt to watch for?

A. Yes.

Q. And attempt to keep it cleaned up?

A. Yes.

Q. But you do recognize that it does pose a problem in merchandising meat?

A. Yes.

He testified further:

Q. You have in the past seen spots back there, haven't you?

A. Yes.

Q. Both before and after the accident?

A. Yes.

Q. Do you have any idea where those spots come from?

A. No.

Q. Dripping from meat packages?

A. It could be anything.

* * * * * *

Q. Do you have any instructions to the butcher and other personnel on [the store's]. payroll about policing the area around there and watching it?

A. No.

The butcher, who was the only store employee on duty in the store's meat department at the time of the fall, who helped plaintiff to get up after her fall and who wiped up the liquid on which plaintiff had slipped, testified as follows:

Q. Now, Mr. Williams, in the course of the merchandising of their meats and chickens out there, matter is dropped on the floor in front of the case, is it not? You have leakage out of the packages, moisture sometimes drops on the floor?

A. Yes, that is true.

Q. And, this is something that has been happening ever since they put in that type of merchandising, is it not?

A. I would say it happens occasionally, yes.

Q. And, you people, the store people were aware of it, were they not?

A. I think the meat department personnel perhaps all store personnel are aware of that fact, that those things happen or could happen occasionally, yes sir.

▇ We believe that the factual circumstances were such that the jury unquestionably would have been warranted in inferring that the liquid on the floor in front of the meat counter was a recurrence of the condition of accumulations of liquid matter at that location and that the defendant had actual notice of the recurring condition. We also believe that, although the Indiana courts have not directly spoken to the question, actual notice of a recurring dangerous condition which is left uncorrected is sufficient under Indiana law upon the recurrence of the condition to justify a finding of liability against a defendant whose duty it was to protect against the danger. We reach this conclusion by two routes: the language of the decisions notwithstanding, certain Indiana slip and fall cases are logically explicable only on that basis; and, second, the Indiana courts do not regard their tort law in the slip and fall category to be aberrant and would follow the progressive trend in other jurisdictions which would sustain a recovery based on the theory advanced by the plaintiff.

Robertson Bros. Dep't Store v. Stanley, *supra,* was concerned with a factual situation analogous to the instant case. There, the plaintiff had slipped and fallen due to melted snow on the floor of the defendant's store. The evidence was that defendant's employees and others from time to time had slipped on the wet floors earlier that day and that defendant's employees had mopped up the accumulations of water several times prior to the plaintiff's fall. There is no evidence reflected in the opinion, however, which would justify a finding that defendant knew of the existence of the specific accumulation of water upon which the plaintiff had slipped. In jus-

tifying its affirmance of a judgment for the plaintiff, the court said:

> [Plaintiff's] requested instruction No. 8 was not confusing, and was applicable to the evidence in the case. The instruction in part stated that "It was the duty of the defendant to make such inspections of its floors as a reasonably prudent person would have made in view of the circumstances prevailing on the day of the injury of [the plaintiff]." [Defendant's] witnesses conceded that it had been snowing and that it was being tracked in, that the servants of [defendant] at various times had mopped up the floor, so that there was no question about notice of the condition being brought to the attention of [defendant]. As to whether or not [defendant] used due care in inspecting the floor was a question for the jury. 228 Ind. at 381, 90 N.E.2d at 812.

Similarly, in Kroger Co. v. Ward, *supra,* the court was faced with another case involving a slip and fall on melted snow in a store. That the manager of the store had notice of the general condition is obvious from the fact that he had posted signs at the entrance warning customers to watch their step as well as from the fact that he had told an employee to provide "constant maintenance" in removing the water. There was no evidence reflected in the opinion which would justify a finding that defendant knew of the existence of the specific accumulation of water upon which the plaintiff had slipped. The court affirmed a judgment for the plaintff, saying with regard to the question of notice of the condition to the defendant:

> There is sufficient evidence in the record to support the fact of constructive, if not actual, notice on the part of the storekeeper in the case at bar of the existence of the water on the floor, the ordering of performing constant maintenance being but one example. The area covered by the puddle, as per the evidence, gives rise to a permissible inference that a period of time sufficient to give [defendant]

notice of its presence was necessary to allow an accumulation of such size. 267 N.E.2d at 191. [The court elsewhere stated, "The size of the pool of water was described by one witness by means of swinging her arms in an arc indicating the pool was about that size." 267 N.E.2d at 190.]

It should be obvious that the size of the puddle of water to which the court referred was far too speculative a basis for a reasonable determination that the puddle had been present for a sufficient length of time to charge the defendant with knowledge of its existence when it did not actually know it was there. We believe that the statement that the size of the puddle justified a finding of notice was a makeweight, and that the court's determination that defendant had notice was based on its earlier observation with regard to the ordering of "constant maintenance". That piece of evidence, and all of the rest of the evidence regarding notice (excluding, of course, the puddle-size statement), only justified a finding that the defendant had actual knowledge of the recurrent condition of water accumulation due to the tracking in of snow, since there was no evidence that defendant had actual knowledge of the existence of the specific injury-causing puddle. We interpret these cases, therefore, as standing for the proposition that actual knowledge of the existence of an uncorrected, continuing or recurrent dangerous condition constitutes constructive knowledge of the existence of a specific recurrence which causes injury to an invitee.

Moreover, we are convinced that the Indiana tort law in the slip and fall category is not aberrant and that an Indiana court faced with the adjudication of the case before us would look for guidance to the decisions of courts of other jurisdictions whose case law would have produced a similar result had Robertson Bros. Dep't Store v. Stanley, *supra,* and Kroger Co. v. Ward, *supra,* been adjudicated there. In so doing, it would find a wealth of decisions which demonstrate the proper legal standards applicable to

this case. A few of such decisions follow in précis.

In Donoho v. O'Connell's, Inc., 13 Ill. 2d 113, 148 N.E.2d 434 (1958), the Illinois Supreme Court considered the problem of whether a sandwich shop had constructive notice of the presence of a grilled onion ring on its floor upon which the plaintiff had slipped. An intermediate appellate court had reversed a judgment for plaintiff in that case, but the Illinois Supreme Court reversed, reinstating the plaintiff's judgment, saying:

> Where . . . in addition to the fact that the substance on the floor was a product sold or related to the defendant's operations, the plaintiff offers some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises, courts have generally allowed the negligence issue to go to the jury, without requiring defendant's knowledge or constructive notice. Moreover, from our review of the cases, there seems to be a diminishing reluctance by courts to accept such circumstantial evidence to establish that the foreign substance came on the floor through defendant's negligence. 13 Ill.2d at 122, 148 N.E.2d at 439.

The Supreme Court of New Mexico in Mahoney v. J. C. Penney Co., 71 N.M. 244, 377 P.2d 663 (1962), an analogous case, was particularly concerned with the propriety of an instruction to the jury which essentially followed the reasoning of the Donoho case. The instruction which the court approved read in part as follows:

> You are instructed that a temporary slippery or sticky place upon the floor of a business establishment is not necessarily negligence, unless it appears that the condition had existed for a time sufficient to permit the personnel of the establishment to become aware of it. You are further instruct-

ed, however, that even though the condition was temporary, if the condition was a recurring one, and the personnel of the establishment had knowledge of the fact that the condition recurred from time to time, or should by the exercise of resonable care have had knowledge of the condition from time to time, then, and in that event, you are permitted to infer that the existence of the condition itself was negligence, even though the defendant lacked knowledge of the particular condition here in question at the time of the occurrence alleged. 71 N.M. at 247, 377 P.2d at 665.

In Bozza v. Vornado, Inc., 42 N.J. 355, 200 A.2d 777 (1964), the principal plaintiff was injured by slipping on a "sticky," "slimy," "chocolate-colored" substance of unknown derivation in a busy cafeteria which had considerably dirty floors. The action had been dismissed upon motion of the defendant in the trial court. The New Jersey Supreme Court reversed, saying:

> In the present posture of this case an inference arises that a dangerous condition existed. Plaintiffs concede that there is no testimony which would establish that defendants had actual notice of the dangerous condition, but contend that defendants were chargeable with constructive notice of the hazardous condition of the floor from the nature and operation of the business itself, or, alternatively, that constructive notice could be inferred from the facts of the case. . . . However, we deem it unnecessary to decide whether the facts in the instant case would permit an inference of constructive notice on the part of defendants. Absent an explanation by defendants, a jury could find from the condition of the premises and the nature of the business that defendants did not exercise due care in operating the cafeteria, and that said negligent operation was the proximate cause of Mrs. Bozza's injuries. 42 N.J. at 358–359, 200 A.2d at 779.

The Arizona Court of Appeals took a more permissive view of the necessity of proving notice in a slip and fall case where the slip is occasioned by a product sold in a self-service store:

We take judicial notice of the fact that in a self-service market operation, such as [defendant's], the customer is expected to handle and examine the produce displayed in the open bins . . . . When produce is displayed and handled in such fashion, the storekeeper must take reasonable protective measures for the benefit of customers who might slip and fall on vegetable matter dropped on the floor by employees or other customers. The finder of fact could reasonably conclude that such hazard to business invitees constituted a risk of harm within the reasonable foresight of the [defendant]; therefore it should have taken reasonable steps to obviate the danger. Rhodes v. El Rancho Mkts., 4 Ariz. App. 183, 185, 418 P.2d 613, 615 (1966).

Finally, we cite CeBuzz, Inc. v. Sniderman, 171 Colo. 246, 466 P.2d 457 (1970). In that case, the plaintiff was seriously injured by a bite from a tarantula hiding in a bunch of bananas two or three days after an employee of the store had seen a similar insect crawl from another bunch of bananas. The evidence was that the defendant had taken no special measures to determine the extent of the insect infestation of the bananas. The court held: "When confronted with the knowledge that insects of this nature might be found in bananas which it was offering for sale, we believe that a clear duty was imposed upon the defendant to take necessary measures to guard against the possibility of injury to its customers when they handle and select bananas for purchase." 171 Colo. at 252, 466 P.2d at 459–460.

The foregoing group of cases is, we believe, representative of the trend of the development of the law in slip and fall cases which Indiana courts would follow, and, indeed, have followed, albeit implicitly, as evidenced by the results reached in Robertson Bros. Dep't Store v. Stanley, *supra,* and Kroger Co. v. Ward, *supra.* Accordingly, because of the improper instructions given the jury, the plaintiff must be given a new trial.

III

The plaintiff also raises some rather vaguely stated objections to the procedure employed by the district judge with regard to the settling of the jury instructions and the affording of the proper opportunity for the stating of objections by counsel as to the giving or failure to give specific instructions. In the exercise of our supervisory responsibility for the proper functioning of the district courts of this circuit, we think that some comment is appropriate regarding the district court's method of dealing with instructions and objections thereto. In this instance, the trial judge received written requests for instructions prior to the commencement of trial. The judge denied each and every request tendered by both sides and used only instructions drafted by the court which he announced at the close of the next-to-last day of the proceedings. At that time each counsel was given a set of the instructions the court proposed to give. The judge then said to the attorneys:

I would ask that you examine the instructions this evening before you leave the building, dictate to [the court reporter] your objections, if you have any, and return to him [the court's] instructions so that I will have them when I consider whether any modifications should be made. Then tomorrow after the jury has been instructed counsel on each side will be invited to approach the court reporter and renew your objections by reference which brings them back into the record at the precise time anticipated by the Federal Rules of Civil Procedure. Therefore, you need not restate them all again tomorrow. Just say "Comes now the Defendant and renews each and every objection heretofore made."

The judge then retired to chambers and objections were dictated to the court re-

ported by plaintiff's counsel. At the conclusion of the reading of the charge to the jury the next day, the judge said "Will counsel for the plaintiff approach the court reporter and renew by reference the record previously made, please." At that time, in the presence of the jury, the plaintiff's attorney stated that he renewed the objections previously made to the instructions, and the defendant's counsel then stated that he had made none.

Rule 51 of the Federal Rules of Civil Procedure is clearly intended to facilitate the proper submission of cases to juries. It first provides for the submission by the parties of written requests for instructions for the purpose of informing the trial judge of the contending views of the law held by the parties, enabling the judge to frame the instructions giving due weight to the positions of the parties. Downie v. Powers, 193 F.2d 760, 766 (10th Cir. 1951). The requirement of the rule that objections to instructions be made before the jury retires or be treated as waived on appeal obviously buttresses the rule's purpose of affording the trial judge every opportunity to correct potential errors in the instructions. 5A J. Moore, Federal Practice ¶ 51.04 (2d ed. 1971). The remaining two provisions of Rule 51 are for the benefit of the parties and serve to make possible the submission of the case to the jury without unfairness to the parties. The requirement that the judge inform the parties prior to final argument of his action on requested instructions enables the parties to argue the instructions to the jury without being surprised when the instructions are given. The final sentence of the rule which states, "Opportunity shall be given to make the objection out of the hearing of the jury," protects the parties from prejudicing the jury by having to make apparent to them who has lost the battle over instructions. Downie v. Powers, *supra* at 767.

█ The practice here, while apparently adhering to the letter of Rule 51, ran somewhat counter to the intent of the rule and contravened its purpose. We are unable to determine from the record whether the parties had adequate notice of the content of the instructions which the court intended to give. Plaintiff's counsel contends he did not. Whatever the situation may have been, the rule contemplates more than technical compliance by mere notice to counsel prior to the closing arguments of the court's formal ruling on any request; it also contemplates that counsel be effectively informed of the content of the instructions which the court intends to give in a sufficiently specific fashion and sufficiently in advance of argument to allow counsel to argue the case intelligently. Dunn v. St. Louis-San Francisco Ry., 370 F.2d 681, 683 (10th Cir. 1966).

█ Moreover, counsel here were not given the opportunity at the proper time to state to the court their objections to the instructions outside the hearing of the jury; indeed, it was made clear to the jury that the plaintiff's counsel had lost on the instructions by the judge's invitation and the response it commanded. While the technique employed here of requiring counsel to register their objections to instructions in advance of the arguments is commendable for the earliness of the notice given the judge of the parties' objections, it does not fully satisfy the requirements of Rule 51. The rule's requirement that counsel state their objections with specificity necessitates deferring the process of formally stating their objections until the charge has been given in its entirety. Dunn v. St. Louis-San Francisco Ry., *supra* at 683–684. Objections to the jury instructions must be made after the charge and before the jury begins its deliberation, therefore, so that the trial court may correct any errors in the instructions, including inadvertent ones which could not have been predicted prior to the charge. Moreover, for such objections to be made without prejudicing the jury against any party, they must be made out of its hearing, which would ordinarily require that the jury be absent from the courtroom.

In this case, as for the future, we believe that an appropriate cure for failures by trial courts to comply with the intent of Rule 51 is to relieve the party aggrieved thereby of the operation of the prohibition against asserting as error the giving of or failure to give an instruction to which objection has not been made. Swain v. Boeing Airplane Co., 337 F.2d 940, 942–943 (2d Cir. 1964), cert. denied, 380 U.S. 951, 85 S.Ct. 1083, 13 L.Ed.2d 969 (1965); Swift v. Southern Ry., 307 F.2d 315, 320–321 (4th Cir. 1962).

The judgment of the district court is reversed, and the cause is remanded for a new trial.