**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Philip HOLLINGER,
Defendant-Appellant.**

**No. 76–1223.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1976.

Decided April 22, 1977.

Rehearing and Rehearing En Banc
Denied June 3, 1977.

---

Harry J. Busch, Sherman C. Magidson, Chicago, Ill., for defendant-appellant; Carl P. Clavelli, Chicago, Ill., of counsel.

Samuel K. Skinner, U. S. Atty., John L. Gubbins, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, PELL and BAUER, Circuit Judges.

PELL, Circuit Judge.

The defendant, Philip Hollinger, was charged in a fourteen count indictment on October 30, 1975. Counts 1, 3, 5, 7, and 9 charged that Hollinger wilfully and knowingly subscribed 1969 through 1973 income tax returns which he did not believe to be correct as to every material matter reported, in violation of 26 U.S.C. § 7206.[1] Counts 2, 4, 6, 8, and 10 charged that Hollinger willfully and knowingly attempted to evade and defeat a large part of the income tax due and owing by filing false and fraudulent returns for the years 1969 through 1973, in violation of 26 U.S.C. § 7201.[2] Counts 11 through 14 charged that Hollinger obstructed commerce by extortion by knowingly obtaining money from various named individuals and companies with their consent induced by the wrongful use of fear of economic harm and under color of official right in violation of 18 U.S.C. § 1951.[3]

After a jury trial, Hollinger was convicted on all counts of the indictment and was

---

1. 26 U.S.C. § 7206, in pertinent part, provides:
   Any person who—
   (1) Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . .
   shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

2. 26 U.S.C. § 7201 provides:
   Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

3. 18 U.S.C. § 1951, in pertinent part, provides:
   (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
   (b) As used in this section—
       *     *     *     *     *     *
   (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
   (3) The term "commerce" means . . . all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

subsequently sentenced to the custody of the Attorney General for a period of four years on each count.[4]

During the years 1969 through 1973, Hollinger received cash payments of approximately $93,000 which he did not report as income on the tax returns he filed jointly with his wife, Anne M. Hollinger. During that period, Hollinger reported a total adjusted gross income of $47,620, calculated total taxable income as $32,309, and paid $5,587 in federal income taxes.

Viewing as we must the evidence in the light most favorable to the Government, Hollinger, serving as president of the Village of Brookfield, and by way of extortionate conduct, received during the years 1969 to 1971 the sum of $58,230 from William Hall, owner of the Berwyn-Stickney Tree Service. Similarly, Carl Rauschert, vice-president of National Power Rodding, paid over to the defendant the sum of $5,911.03 during the years 1969 to 1973, calculating his payments on the basis of five cents per lineal foot for sewer cleaning. Albert Berg, president and sole shareholder of A. E. Berg Company, Inc., contractor in 1972 for the construction of Brookfield's new municipal building, paid over to the defendant during that year the sum of $6,500. Louis Graben, a salesman for Business Interiors, which supplied the furniture for the new municipal building, paid over to the defendant during 1973 the sum of $5,500.

In sum, the individual victims named in counts 11 to 14 of the indictment paid out to the defendant a total of $76,141.03. Additionally, Hollinger received during the period the sum of $11,700 from Donald Smith, a licensed architect with the firm of Smith and Neubeck, which did the architectural work on the new municipal building. Frank Novotny, president of Frank Novotny and Associates, who acted as Brookfield's consultant on civil engineering during the years 1969 through 1973, delivered

approximately $5,782 to Hollinger. Thus, the testimony indicated that Hollinger's real taxable income during the period was somewhere between $124,754 and $125,059. Hollinger paid taxes in the amount of $5,587, but the real tax liability was somewhere in the range $28,489 to $30,068.

Seven witnesses with first-hand knowledge and profuse supporting documentation testified to making coerced cash payments totalling over $92,000 to Hollinger over a five year period. Indeed, the defendant admitted receiving money from a number of the witnesses but explained that he kept cash contributions for Brookfield's People's Economy Party, using the funds according to the needs of PEP by making cash deposits into its bank account and by paying PEP bills with cash. Hollinger denied receiving monies other than approximately $25,000, which he characterized as "political contributions." The defendant's attempt to establish a political contributions defense did not explain what happened to a considerable portion of the monies. Viewing the evidence in the light most favorable to the Government, over $60,000 in cash payments which represented the proceeds of extortion was never accounted for.

No question of the sufficiency of the evidence arising in this appeal, the defendant urges reversal of the conviction on the grounds of instruction errors, the erroneous exclusion of Defendant's Exhibit No. 4, improper closing argument by the prosecutor, and the court's failure to dismiss the indictment.

## I.   Claimed Errors in Instructing the Jury

The defendant claims that the trial court committed reversible error in giving Instructions Nos. 42, 43, and 53. The Government contends that Hollinger cannot seek review of these instructions because of inadequate compliance with the requirements

---

**4.** The final judgment order stated that Hollinger was to be committed "for a period of FOUR (4) YEARS on each count of the indictment; said sentences are to run concurrently." Inasmuch as the sentence imposed exceeds the statutory maximum for Counts 1, 3, 5, 7, and 9,

we, while affirming the convictions, are remanding as to Counts 1, 3, 5, 7, and 9 for resentencing, said new sentences not to exceed the statutory maximum of three years as to each count.

of Rule 30, Fed.R.Crim.P. As in *Hetzel v. Jewel Companies, Inc.,* 457 F.2d 527, 534 (7th Cir. 1972), we think that some comment is appropriate regarding the district court's method of dealing with instructions and objections thereto.

The core of Hollinger's defense to the tax counts was that the monies he had received were political contributions which, even if extorted, would not constitute "taxable income" because such money was not *"gain,"* and therefore, not income as defined by law. During the initial conference on tendered instructions, the defendant objected to the Government's proposed instructions defining taxable income (No. 42) and the duty to report such income (No. 43). Further, the defendant objected that a cautionary instruction regarding the limited use of evidence regarding Hollinger's actions and/or conduct prior to October 31, 1970, was inadequate (No. 53).

At the first instructions conference, the trial judge essentially agreed with the defendant that the instructions on taxable income were inadequate. The judge deleted the last two sentences of the Government's tendered No. 42, and the defendant acquiesced in that change. As to Instruction No. 43, the judge suggested a possible modification; and the Government counsel indicated that he would undertake to rewrite the instruction.[5] However, neither the Government attorneys nor the defense counsel ever rewrote the instruction to highlight the so-called political contributions defense, and the judge's charge to the jury actually included the original and unmodified Instruction No. 43.[6] Similarly, the trial judge attempted to formulate language that would satisfy defense counsel as to the claimed inadequacy of No. 53. The judge indicated that defense counsel could redraft it if they wanted to. One of the defense team indicated that it should be redrafted, but no defense attorney did so.

At the second instructions conference, there was no discussion of the modified Instruction No. 42. As to No. 43, the trial judge did not formally reread it. Defense counsel indicated that, apart from its lack of any language dealing with the element of willfulness, they saw nothing wrong with it as it stood. Finally, as to No. 53, the trial judge determined that it would be better to leave the language the way it was originally.

After the charge to the jury had been delivered and the jury had retired, the defense objected to the wording of Instruction No. 43, referring back to the objection they had raised in the initial instructions conference. The court noted that nobody had presented it with an instruction which, in effect, would have told the jury that if they found that any portion of the proceeds of the extortion was in fact a campaign contribution, that part of the monies was not taxable income. One of the defense team suggested that his co-counsel had presented such an instruction, but the court correctly noted that no one had done so. The court refused to recall the jury to "give them an instruction which would highlight something that nobody asked me to give them before."

---

5. The record reveals this colloquy:

> MR. CONLON [Assistant United States Attorney]: Shall we rewrite that [No. 43] in the evening, this evening, and bring it back to you?
> THE COURT: Yes. Rewrite it.
>   *   *   *   *   *   *
> THE COURT: . . . [W]ell, go ahead and rewrite it.
> MR. MARCUS [Assistant United States Attorney]: Okay.
> MISS LAVIN [Defense counsel]: Yes. Please.

6. As originally presented, the instruction read as follows:

> Now, if you find from the evidence beyond a reasonable doubt that the defendant, Philip J. Hollinger, received taxable income, as defined in these instructions [Instruction No. 42], from William Hall, Albert Berg, Frank Novotny, Carl Rauschert, Lou Graben, Don Smith, and/or Richard Scott, then I instruct you that he was under an obligation to report the money as income on his tax return for the year in which he received it.

If modified in accordance with the judge's suggested modification, the phrase "for any purpose other than campaign contributions" would have been inserted immediately after the name "Richard Scott."

■ The gist of the Government's argument is that Hollinger may not seek review of any of the challenged instructions because he did not properly preserve the error, if any. As to No. 43, it concedes that the federal prosecutors had agreed to rewrite it but points to a subsequent assertion by one of the defense counsel that his co-counsel had undertaken a redrafting as an indication of some ambiguity in the record. Although the transcript contains the assertion, we find in the record no ambiguity regarding the trial judge's directive to the Government counsel. The Government argues, first, that Hollinger did not state distinctly and specifically the grounds of his objection to No. 43. Second, citing *United States v. Wright,* 542 F.2d 975, 983–86 (7th Cir. 1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 · (1977), the Government argues that specific objections must be voiced after the charge to the jury. Thirdly, as a corollary to its timeliness contention, the Government contends that "defense counsel's objection cannot be bolstered by his attempt to incorporate by reference the instructions conference discussions. . . ." [7]

We shall approach the Government's three essential arguments in reverse order. First, as to the incorporation by reference, the trial judge may have misled defense counsel. After the Government's rebuttal argument, we find this colloquy:

MISS LAVIN [Defense counsel]: Your Honor, may the record just show that our discussions in chambers—

THE COURT: Any objections that were made—

MISS LAVIN: As provided by Rule 30?

THE COURT: Yes. Any objection made—

MISS LAVIN: That the discussion in chambers will satisfy the Rule 30.

THE COURT: Yes. Any objection made by counsel to any refusal to give any instructions or the giving of certain instructions will be considered as having been repeated after the argument. [query: the charge?]

MISS LAVIN: Thank you.

The only possible meaning that defense counsel could attach to the judge's remarks was that he would allow objections to be incorporated by reference.

In *Wright, supra* at 984, this court explained that incorporation by reference of earlier objections was found not to be in compliance with Rule 51 in *Hetzel, supra.* Although *Hetzel* was technically only a ruling regarding the procedure to be used in a civil case, its disapproval of incorporation by reference was implicitly extended to the criminal context of Rule 30, Fed.R.Crim.P., in *United States v. Lawson,* 507 F.2d 433, 443–44 (7th Cir. 1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). At the date of trial in the instant case, defense counsel under the law of the circuit should not have been seeking nor should the trial judge have acquiesced in the use of incorporation by reference as that method had been condemned as a way of complying with either Fed.R.Civ.P. 51 or Fed.R. Crim.P. 30.

At this point we need not speculate as to the reasons why trial judges have disregarded our previous decisions condemning incorporation by reference. Perhaps they have discovered like those in the Ninth Circuit, that the procedure of noting for the record at the close of the instructions that counsel adopts the objections made earlier while then making in full any new objections not previously presented

saves time . . . [and] is generally acceptable to counsel . . . [particularly where] opportunity is given for further objections, in addition to those previ-

**7.** The Government relies on *Wright, supra,* as authority for the impropriety of an attempt to use incorporation by reference. We think it clear that *Wright* disapproved of this procedure only because of the *Hetzel* approach to the analogous problem in a Rule 51, Fed.R.Civ.P., context. The author of *Wright* expressly noted, 542 F.2d at 983, a preference for the procedure approved in the Ninth Circuit, which allows incorporation by reference. *See Las Vegas Merchant Plumbers Association v. United States,* 210 F.2d 732, 744 (9th Cir. 1954), *cert. denied,* 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645.

ously made and incorporated by reference.

*Merchant Plumbers Association, supra* at 744.

■ Apart from *Hetzel* and its progeny, there is no impediment to district court approval of incorporation by reference. The plain language of Fed.R.Crim.P. 30 and Fed.R.Civ.P. 51 does not directly prohibit resort to such a practice. On balance, we can find no crippling deficiency in a procedure whereby the trial judge confers in advance of argument with the opposing attorneys and, using the services of a court reporter, allows the attorneys to set out plainly, distinctly, and specifically their objections to tendered instructions. An on-the-record instructions conference provides a suitable means for meeting the requirements of Rule 51, Fed.R.Civ.P., and Rule 30, Fed.R.Crim.P., and clearly enables the trial judge, *in advance of instructing the jury,* to have erroneous aspects pointed out to him.

However, the phenomenon of inadvertent error is not always avoided by such conferences. Largely for that reason, the *Hetzel* opinion stated that Rule 51 "necessitates deferring the process of formally stating their objections until the charge has been given in its entirety." *Hetzel, supra* at 535. Of course, no one can quarrel with the advisability of bringing to the trial court's attention the matter of correcting errors which somehow have gotten into the charge *as it is actually given* despite the consideration of the instructions in advance of the jury charge. *See Wright, supra* at 983. Thus, *Wright* found *Hetzel*'s postponement of the formal statement of the grounds of an objection to the post-charge time frame a workable and desirable method of eliminating any inadvertent errors that might emerge.

At the same time, *Wright* noted that there was no utterly compelling reason why the language of Rule 30 must always be interpreted as requiring the voicing of specific objections "immediately before the jury retires." *Id.* at 982. Nor did *Wright* find any *a priori* reason for interpreting the language of Rule 30 as necessarily requiring that objections must be pressed "between the final arguments and the retirement of the jury for deliberation." *Id.* By following *Hetzel*'s Rule 51 requirement, *Wright* placed an additional restriction on the way in which trial judges could settle the instructions in criminal cases.

Upon reflection, we think that *Hetzel* and *Wright, supra,* have imposed too restrictive a "timeliness" requirement. Because the language of Fed.R.Civ.P. 51 and Fed.R.Crim.P. 30 does not itself require that objections be voiced after the jury charge, this court's decisional imposition of that requirement has placed an extra burden on attorneys and trial judges alike. Of course, if the trial judges in this circuit prefer to do so they are empowered to require the voicing of objections after the charge is given. Having considered many cases where an earlier delineation of specific objections to tendered instructions would have proved helpful to the trial judge, we think that a universal requirement of post-charge formalization on the whole would impede rather than promote the efficient settling of instructions.

First, imposition of a timeliness requirement beyond that directly mandated by Fed.R.Civ.P. 51 and Fed.R.Crim.P. 30 impinges upon the broad discretion which trial judges would otherwise possess in formulating the means for achieving compliance with the rules. Further, a requirement that invariably pushes to a post-charge time frame the formal articulation of objections to tendered instructions devitalizes earlier on-the-record instructions conferences. Attorneys who realize that their remarks must be repeated in great detail after the charge might conceivably attach little significance to the earlier discussions to the detriment of the judge's understanding of a possible instructional defect. The earlier conference becomes something far less than a serious consideration, and the trial judge's preparation for the actual charge can suffer in direct proportion.

■ Ordinarily, trial judges will derive considerable benefit from a serious ex-

change of views by opposing counsel regarding the proper formulation of the applicable rules of law before they must charge the jury. Accordingly, we shall exercise our supervisory power by withdrawing our present requirement that the formal statement of objections be deferred to the post-charge time frame. Henceforth, specific and distinct objections voiced in an earlier instructions conference held in the presence of a court reporter will be considered timely under Fed.R.Crim.P. 30 and Fed.R.Civ.P. 51. Moreover, where previously-voiced objections have met the requirement that the matter to which a party objects and the grounds thereof have been stated distinctly,[8] we shall henceforth allow counsel to incorporate them by reference. While the process of stating for the record that such pre-charge objections are incorporated by reference is a somewhat pro forma exercise, we are nevertheless of the opinion that the better practice would be for counsel to see that the record affirmatively shows that counsel has renewed his specific objections by the incorporation method.

To the extent that *Wright* imposes different or additional requirements in the settling of instructions in a criminal case under Fed.R.Crim.P. 30, it is hereby overruled. To the extent that *Hetzel* and its progeny impose different or additional requirements in the settling of instructions in a civil case under Fed.R.Civ.P. 51, they also are hereby overruled.[9]

██ In so doing, we do not in any way intend to indicate that the trial judge must require a formal statement of objections prior to the giving of the charge. Whether the distinct statement of the matter to which counsel objects and the grounds of the objections are stated before or after the giving of the charge remains in the discretionary choice of the judge. If, however, the judge conducts only an informal conference prior to the giving of the charge as to what requests will be granted or denied and what instructions the judge intends to give, a full opportunity must be given after the jury has been instructed, but before it begins to deliberate, for counsel to make a full record on their objections to the charge as given as well as to the denial of requests. Further, even if the objections are stated distinctly and on the record before the giving of the charge and need not be repeated subsequent thereto but may be incorporated by reference as we now hold, nevertheless full opportunity must be given after the statement of the charge and before the retirement of the jury to state any additional objections which may have developed as a result of the giving of the charge.

Our overruling of previous authorities does not compel a favorable ruling on the defendant's contentions regarding instruction errors, and we turn now to a particularized examination of those claims of reversible error.

### A. Instruction No. 42

The first of the Government-tendered instructions dealing with taxable income consisted of four sentences.[10] After looking at

---

8. Fed.R.Crim.P. 30, in pertinent part, provides: No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.
Fed.R.Civ.P. 51, in pertinent part, provides: No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

9. This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing in banc on the question of overruling *Wright*, and *Hetzel* and its progeny.

10. The instruction, as originally tendered, read as follows:
Under the law income for federal tax purposes means any gain from whatever source, legal or illegal. An unlawful gain received by a person such as the proceeds of bribery or extortion is income and under the law must be reported on that person's federal income tax return. Therefore, I hereby instruct you that if you find

the instruction, the trial judge remarked that there was something wrong with the instruction. The remark might well have applied to the use of the double negative in the last sentence, but the record provides no basis for determining whether or not this was the case. After both defense counsel had agreed that the first two sentences of the proposed instruction were true, one of them adverted to the words "cash payments" in the third sentence and to a possible relation to political contributions.[11]

Making no distinct reference to his legal theory that the political contributions were neither gain nor taxable income, the defendant's counsel never pinpointed directly the offensive matter. More to the point, neither was there a distinct statement that the proposed instruction was equating cash payments with illegal or unlawful gain. The third sentence of the Government-tendered instruction would have allowed a guilty verdict only if the jury found that any cash payments received by Hollinger were gain, either legal or illegal. Defense counsel never adverted to the phrase "such a sum of money" in the fourth sentence.

█ Nevertheless, the trial judge grasped the fundamental nature of the defendant's objection. The court agreed with the defense and struck the last two sentences, the only portion of the instruction which the defendant found unacceptable. Thus, the court gave No. 42 in the form which the defense counsel regarded as a true statement of law and to which they had consented. The defendant is in no position to claim reversible error in such circumstances.

### B.  Instruction No. 43

Similarly, there was no reversible error in the district court's refusal to recall the jury to give a modified formulation of Instruction No. 43. At the time of the second instructions conference, defense counsel were aware, or should have been aware, that the Government attorneys had failed to comply with the court's indication that reference to political contributions should be included. If a proper instruction on the political contributions defense was essential to the proper formulation of the charge, the defense attorneys could have submitted one at that point. The record clearly establishes that the second conference was primarily concerned with review of the defense-tendered instructions. The breach by the Government attorneys of their commitment to redraft the instruction is regrettable, but the defendant's assertion that the failure of the Government to rewrite the instruction "was a direct cause of his conviction on the tax counts" is extravagant.

Essentially, the defendant complains of an omission from the charge of the judge's proposed modification. Viewing the case in that manner, the error here pressed falls into the category of inadvertent mistakes made in the actual giving of the charge. We can assume that the defendant's counsel thought that the court would instruct the jury in accord with its suggested modification, even though a written formulation of

---

11.  The record reveals this colloquy:

MR. CALIHAN [Defense counsel]: But "cash payments" could be—you might get into, I mean, you might get into political contributions, which under that Stratton case are just not income. I mean, the first paragraph, I am sorry, I mean, that's—

THE COURT: The first sentence?

MISS LAVIN [Defense counsel]: That is right. It's all right. Just as you say, just the first sentence.

MR. CALIHAN: The first two sentences.

THE COURT: Well, all right. I think that some of the rest of it is kind of misleading.

MR. CONLON [Assistant United States Attorney]: From "therefore" is out?

THE COURT: Yes. That's out. All right. No. 42 given, with that change.

beyond a reasonable doubt that the defendant Phillip J. Hollinger received cash payments in the years alleged by the government and if you find that it was income as described above, then under the law the defendant was required to report that money as income on his federal income tax return. If on the other hand you are not convinced from the evidence beyond a reasonable doubt that the defendant did not receive such a sum of money in a particular year charged, then there was no duty to report that sum of money on the defendant's federal tax return, and you should then find the defendant not guilty as to that count.

the revised No. 43 had not been presented by the attorneys. But when the trial judge gave the original Government-tendered instruction, defense counsel could not wait until *after the jury retired to deliberate its verdict* before bringing the mistake to the attention of the court. As the judge pointed out when the objection was belatedly lodged, bringing the jury back at this point would in effect highlight something which no one had presented in an instruction.[12]

Here, the record establishes that the jury had retired to begin its deliberations before the objection was voiced, although the defendant was not precluded from objecting prior to the retirement. The plain language of Rule 30 requires that objections be pressed before the jury retires. Once defense counsel became aware that the judge had inadvertently failed to give a modified version of No. 43, they were obliged to note their objection upon the completion of the charge. Their failure to do so precludes appellate review of the claimed inadequacies of the instruction.[13]

## C. Instruction No. 53

The defendant claims that the trial was characterized by a melange of evidence suggesting criminal liability, but relating to some events unquestionably beyond the statute of limitations and, in any event, uncharged in the indictment. The defendant does not challenge the admissibility of this melange of evidence, but rather argues that the court's failure to give clear and unequivocal instructions describing the limited purpose for which much of the Government's evidence was offered permitted the jury to use such evidence improperly.

The only limiting instruction given on the subject of other offenses was Instruction No. 53.[14] While a clearer explanation of the narrow purpose for which the evidence of other, similar extortionate acts could be used might well have merited consideration, the record establishes that the district court wrestled with the wording of the cautionary instruction. The court invited the help of defense counsel and was open to their

---

**12.** We are aware that some district court judges who prefer to receive the distinct statement of objections subsequent to the giving of the charge, recognizing that the statement must be made prior to the jury's retirement to consider its verdict, will tell the jury members that even though they are retiring to the jury room they should not commence their deliberations until the judge sends them word to do so. Others follow the practice of telling the jury not to commence deliberations until the exhibits are delivered to them upon which the judge holds the exhibits until he has had a chance to hear any final objections from the attorneys. It would appear that resort should be had to some similar procedure irrespective of whether the distinct statement of the matter and the grounds of objections is made before or after the giving of the charge because of the constant possibility, as was demonstrated in the present case, that some ground of objection may surface during the actual giving of the charge. We do not purport to lay down specific procedural guidelines in this respect, leaving the matter to the good judgment of the trial judge to see that the matter is handled prior to the jury's retirement for deliberation.

**13.** We have not deemed it necessary to address ourselves to the question of whether the instruction as given was prejudicially erroneous. We do note, however, that after the substantial excision from No. 42, taxable income was confined to "gain" and the objectionable reference

to "cash payments" which might arguably have included political contributions was eliminated. No. 43, if it had been modified as was discussed, *see* note 6 *supra,* would have presented the anomalous concept of receipt of "taxable income" "for any purpose other than campaign contributions," an inconsistent combination inasmuch as the campaign contributions would not have been taxable income even though they would have been cash payments. We have some difficulty in seeing that the jury would have been misled into thinking that campaign contributions should be considered as taxable income. If the defense desired greater emphasis on the non-taxable income status of the campaign contributions, it should have tendered an instruction to that effect.

**14.** *Instruction No. 53, as read to the jury, stated:*

Now, the defendant may not be convicted of any offense charged in Counts 11 and 14, which are two of the extortion counts, unless the offense was committed after October 31st, 1970, however, you may consider Hollinger's actions and/or conduct prior to that date, that is, October 31st, 1970, in determining whether or not the acts committed after October 31st, 1970, constituted extortion beyond a reasonable doubt, as charged in the indictment.

suggestions. Indeed, the defense submitted orally during the first conference a suggested modification. On the following day, when the trial judge read back that formulation of No. 53, defense counsel asserted that they didn't understand it. When the trial judge indicated that he would give the instruction as tendered, the defendant's response was a general objection.

■ Absent the tender of any limiting instruction, the defendant's present claim of reversible error has a hollow ring. If the defendant had "stated distinctly" the matter to which he objected and the grounds of his objection, the district court no doubt would have been in a better position to delineate more precisely the uses of similar act evidence which the jury could properly make. In *United States v. Bastone,* 526 F.2d 971, 987 (7th Cir. 1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976), this court ruled that, where the defendant failed to offer an instruction on the basis of a similar acts theory, it would not reverse unless there was a showing of plain error under Rule 52(b), Fed.R.Crim.P. While we think the matter could have been put more precisely than in the language of the instruction given here, we also think that its final formulation was within the limits of the trial court's discretion, which discretion was not abused. *Cf. United States v. Rajewski,* 526 F.2d 149, 160 (7th Cir. 1975), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976). The use of Instruction No. 53 was not plain error.

## II. Erroneous Evidentiary Ruling

The defendant asserts that the district court erred by refusing to allow into evidence a letter written on March 25, 1974. The defendant had been interviewed by I.R.S. Special Agents William Witkowski and Wayne Bubeck on October 17, 1973. During the course of that interview, Hollinger stated, *inter alia,* that he did not have a safety deposit box, that he had never maintained one, and that he had not had stock transactions at Paine, Webber, Jackson & Curtis since 1967. In fact, Hollinger was the named lessee of a safety deposit box rented from Florida Federal Savings and Loan Association since May 14, 1956. Moreover, he had purchased thousands of dollars of stock from Paine, Webber in 1968.

The letter in question which the defense was not permitted to introduce into evidence would, the defendant argues, by correcting the October misstatements, have countered the effect of the Government's testimony that Hollinger had evinced a consciousness of guilt in the statements he made to the special agents.

We find no merit in this contention. As an initial matter we are unable to give any fair evaluation of the content of the letter because it was not brought to this court as a part of the record. We will assume, however, the correctness of the statement in the defendant's brief that the letter was not only on the stationery of Hollinger's attorney but was signed by the attorney. We fail to see how a letter written by the lawyer some five months after the events in question could in any way reflect upon whether Hollinger's attitude at the time of the interview was to cover up some of his financial transactions.

■ Finally, irrespective of whether the letter merely factually corrected earlier statements or went further and attempted to offer explanations of why he had made the statements, and because of the absence of the exhibit from the record brought up we are uncertain as to what it did say, the record does establish that on both direct and cross examination, Hollinger testified regarding his prior misstatements. He also explained that he was unprepared for the interview. The introduction of the letter would have added nothing to the testimony Hollinger did give and its exclusion was not error.

## III. Improper Argument By The Prosecutor

The defendant claims that he was deprived of due process of law because of Government counsel's closing argument. Specifically, he charges that the prosecutor made erroneous statements about grants of

immunity in order to bolster the credibility of the Government's witnesses and also exhorted the jury to disregard fundamental principles of fairness because of the crimes with which the defendant was charged.

### A. Immunity

In closing argument, Government counsel attempted to clarify for the jury what "immunity" was.[15] Defense counsel immediately objected to the explanation as a misstatement of the law. Simultaneously, defense counsel reserved a motion for a mistrial.

The trial judge's immediate reaction to the objection was that "[i]t could be on the recommendation of the prosecutor, but the Court is the one that determines whether immunity should or should not be granted." The defendant complains that the prosecutor continued to urge the jury to believe its witnesses because of their immunity.[16] Subsequently, at a side bar conference, defense counsel correctly pointed out that the prosecutor's statement laying responsibility for immunity on the court was not true. Essentially, counsel explained that the court's role was purely ministerial if all the proper papers were filed. The court acknowledged that the defense objection was proper and that the prosecutor's statement should not have carried the implication that the prosecutor doesn't have very much to do with the grant of immunity. Recognizing that the court's role in an immunity order was purely ministerial if all the proper papers were filed, the court indicated that it would instruct the jury to that effect. In the charge, the trial judge read the relevant

portions of 18 U.S.C. § 6003 in order that the jury might understand the circumstances under which grants of immunity are made.

Examination of the trial record discloses that defense counsel not only withdrew its mistrial motion but expressed the view that an instruction telling the jury that the court was required to grant immunity upon a proper request made by the prosecutor would be curative of the prosecutorial mistake. On appeal, the defendant admits that the court did read 18 U.S.C. § 6003 and did explain that "if the Petition is in proper order setting forth these facts [required by subsection (b) of the statute], then the Court issues the Order," but argues that the court's language was not sufficiently clear, explicit and correct as to obviate any possibility of jury confusion. Specifically, the defendant complains that the trial judge did not fulfill his promise to advise the jury that a judge is "required" to grant immunity when the papers requesting immunity are in proper order.

We reject the defendant's argument. At the instructions conferences, the defense maintained its objection to an earlier-formulated immunity instruction (No. 32A) as containing an argumentative sentence. But with respect to the trial judge's determination to read 18 U.S.C. § 6003 exactly, the defense counsel acquiesced in that resolution of the problem posed by the prosecutor's misstatement of law. Under such circumstances, the defendant has waived his claim that the instruction as given was insufficiently curative.

---

**15.** While attempting to make this explanation, the prosecutor stated:

> Defense counsel has made reference to the fact that some of the government witnesses have immunity. There is no question about it. But let's see exactly what "immunity" is. Nothing you say can be used against you, provided you tell the truth. It is not what I say it is or what the government says that it is, that's what "immunity" is. Some of the immunity was court ordered by judges in this building like Judge Decker, and you heard testimony to that effect.

> The government has no control over the judiciary. We have no control over the federal judges. If that's what the judge says that it is, then that's what it is, whether we like it or not.

**16.** Immediately after the trial judge's remark, the prosecutor continued:

> With this immunity, our witnesses are free to speak the truth because they have nothing to hide. They have no motive to lie. That's the only way that *they can get into any trouble is* if they lie. What possible motive with immunity could any of our witnesses have for telling you anything but the truth?

At this point, it is appropriate to note once again that the records before us have too often disclosed prosecutorial arguments which, while not rising to the level of plain error, were nevertheless questionable, if not improper. *See United States v. Spain,* 536 F.2d 170, 176 (7th Cir. 1976), *cert. denied,* 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976). It has long been established that a district judge has no discretion to deny a request by the United States Attorney that a witness be granted immunity, so long as the request is proper in form. *See generally In re Daley,* 549 F.2d 469 (7th Cir. 1977). *See also Thompson v. Garrison,* 516 F.2d 986 (4th Cir. 1975), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263; *In re Lochiatto,* 497 F.2d 803 (1st Cir. 1974); *In re Grand Jury Investigation,* 486 F.2d 1013 (3d Cir. 1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224. To the extent that the prosecutor's statement in the instant case carried a suggestion that the Government witnesses were telling the truth because district court judges had independently seen fit to grant them immunity, it was inaccurate and misleading. This court has previously instructed federal prosecutors in this circuit to conform their arguments to the standards set by the Supreme Court in *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Failure to do so by advancing improper insinuations and assertions calculated to mislead the jury, *see Spain, supra* at 174–76, will mean that the prosecution will face the substantial risk of having a conviction set aside.

### B. Prosecutorial Invitation to Ignore Defendant's Rights

The defendant also complains that the prosecutor's concluding remarks to the jury asked them to ignore Hollinger's rights in determining whether he had violated the law.[17] The defendant contends that this closing comment represented a form of "give-the-defendant-the-same-justice-he-gave-his-victim" argumentation condemned in *People v. Jackymiak,* 381 Ill. 528, 46 N.E.2d 50 (1943).

In *Spain,* this court noted that it did not intend to discourage a prosecutor from vigorous argument or frank comment on the evidence or the character of a witness. *Id.* at 175. Applying those principles to the instant case, we do not think that the characterization of the conduct in Brookfield under the defendant's presidency as "outrageous" was undignified or unduly intemperate. *See Berger, supra,* 295 U.S. at 85, 55 S.Ct. 629. While we will concede that the last sentence of the prosecutor's argument was harsh, we do not regard it as an invitation to ignore Hollinger's rights.

In any event, no objection was made to the argument and while we have a question as to the propriety of the remarks, we cannot say that they constituted plain error.

### IV. Sufficiency of the Indictment

The defendant argues that the denial of his motion to dismiss the indictment for insufficiency due to the absence of an adequate factual basis to charge interference with interstate commerce was error. We find no merit in the argument. Clearly, an indictment must allege the essential elements of the offense charged. *See United States v. Eichhorst,* 544 F.2d 1383, 1388 (7th Cir. 1976). In the instant case, Counts 11 through 14 fairly informed Hollinger of the interstate commerce element. The standards set forth in *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), were met. An accused must be informed of the charges against him so that he can prepare his

---

**17.** The federal prosecutor concluded his argument in the following manner:

> I ended my opening statement by telling you "From the bottom of the sewers to the tops of the trees you will see and hear how the citizens of Brookfield were robbed by that man, Philip Hollinger." You have seen and heard what totally outrageous, outrageous

> conduct existed in that village under President Hollinger. This conduct existed from 1961 through 1975. It began with Frank Novotny and ended in '75 with Carl Rauschert. *I now ask you to apply the same justice that President Hollinger gave the citizens of his community and vote a verdict of "guilty" as to all counts.*

defense and so that he may be protected against a second prosecution for the same offense. *United States v. Cassell,* 452 F.2d 533, 536 (7th Cir. 1971). When those standards are met, it is well settled that in order for a variance between indictment and proof to be fatal, the evidence offered must prove facts materially different from those alleged in the indictment. *See United States v. Warden,* 545 F.2d 32, 35 (7th Cir. 1976). We hold that the district court did not err in refusing to dismiss the indictment.

For the reasons hereinbefore set out, the judgment of conviction is affirmed; however, the case is remanded for resentencing as to Counts 1, 3, 5, 7, and 9.