NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-313                                              Appeals Court

LINDA S. BOWERS  vs.  P. WILE'S, INC.[1]


No. 14-P-313.

Middlesex.     December 10, 2014. - May 15, 2015.

Present:  Kantrowitz, Green, & Sullivan, JJ.


Negligence, Retailer.  Notice.  Practice, Civil, Summary
      judgment.



Civil action commenced in the Superior Court Department on
February 24, 2012.

The case was heard by Paul D. Wilson, J., on a motion for
summary judgment, and a motion to vacate judgment was heard by
him.


David McCormack for the plaintiff.
Joseph T. Black for the defendant.


GREEN, J.  In Sheehan v. Roche Bros. Supermarkets, Inc.,

448 Mass. 780, 788 (2007) (Sheehan), the Supreme Judicial Court

adopted the so-called "mode of operation" approach to premises

liability.  Under that approach, a plaintiff injured as the

_____

[1] Doing business as Agway of Cape Cod.

result of a dangerous condition on an owner's property is relieved of the need to prove that the owner had actual or constructive notice of the condition if he instead establishes that the dangerous condition was "related to the owner's self-service mode of operation." Id. at 786. In the present case, a judge of the Superior Court allowed the defendant's motion for summary judgment, based on his view that the mode of operation approach applies only where the dangerous condition results from breakage or spillage of items offered for sale.[2] We discern no such limitation in the mode of operation approach described by the Supreme Judicial Court in Sheehan, supra, or in the rationale supporting it. We also conclude that the summary judgment record does not foreclose the prospect that the plaintiff could succeed, at trial, in proving that the defendant failed to use reasonable measures to prevent injuries that could result from the foreseeable dangerous condition. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). We accordingly reverse the judgment and the order denying the plaintiff's motion to vacate the judgment, and remand the matter to the Superior Court for further proceedings.

Background. We review the entry of summary judgment de novo, construing all facts in favor of the nonmoving party.

---

[2] In so doing, the motion judge appears to have followed a line of like rulings by other judges of the Superior Court.

Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

We summarize the undisputed facts, construed in that manner, as

they appear in the summary judgment record.

On the afternoon of December 28, 2011, the plaintiff rode

with her father to the defendant's store on Cape Cod.[3] The

weather was clear, with no precipitation, and the ground was

dry. After getting out of the car, the plaintiff walked on the

"inner side of the sidewalk" toward the store. Before reaching

the store, however, she fell after stepping on a small "river

stone" about three-quarters of an inch in size.[4] The stone was

on the sidewalk after having been moved (by some unknown means)

from an adjacent gravel area maintained by the store. The

plaintiff did not see the stone, or any other stones, on the

sidewalk before falling. As a result of her fall, the plaintiff

suffered a "displaced fracture of her right hip that required

two surgical repairs."

At the time of her accident, the plaintiff was looking at a

birdbath on display in the gravel area. She was wearing shoes

called "clogs," and she had had no difficulty with the shoes on

---

[3] As the motion judge observed, the summary judgment record describes the store's location inconsistently, in both Dennis and Orleans. The disparity is immaterial.

[4] As the motion judge noted, the parties have referred to the object in question variously as a river stone, rock, or pebble. We adopt his choice to refer to the object generally as a river stone and agree with him that the precise label applied to the object is immaterial.

that day or in the past. When she fell, she remained on the sidewalk and did not fall into the gravel area or strike any of the merchandise on display.

The plaintiff had visited the store on multiple occasions since the late 1980's or early 1990's. She had walked on the same sidewalk before and had seen similar river stones on it, without encountering difficulty.

The concrete sidewalk on which the plaintiff fell was about six feet wide and ran between the parking lot and the store, in front of, and parallel to, the store front. The gravel area, also about six feet wide, was between the sidewalk and the store front.

Between the gravel area and the front wall of the store building was a porch area. The porch floor surface was on the same plane as the sidewalk and gravel area and was about six feet wide. The store displays merchandise both within the porch area and on and around the gravel area, and customers are allowed to help themselves to products from those areas.

Jessica Wile, a store manager, testified that the store sells various outdoor products during the winter months, including pottery, birdbaths, and shovels. The store's cash registers are located inside and near the store's front doors. The front doors are the only entrance for customers in the

winter months; an alternate entrance through the greenhouse, also at the front of the store, is closed during the winter.

The store constructed the gravel area about fifteen years before the accident.[5] Prior to the plaintiff's fall, no other complaints regarding river stones on the sidewalk were brought to the store's attention, and no accidents from river stones on the sidewalk had occurred. However, it was a common occurrence for customer foot traffic through the gravel area, or manipulation of merchandise displayed there, to cause river stones to move from the gravel area onto the sidewalk. When assisting customers in carrying merchandise to their cars, or when retrieving shopping carts from the parking lot, store employees would look to see if river stones were present on the sidewalk, and would kick any stones back into the gravel area. However, there was no formal schedule for inspections, and no policy requiring that inspections occur on a particular basis or by particular employees.

The store maintained a weekly cleaning list that included spaces for dates and initials from Wile or an assistant manager after an employee completed a task. The cleaning list included tasks such as wiping counters, cleaning doors, and cleaning

---

[5] Wile stated that the store constructed the gravel area of river stones because of a municipal building department requirement that the area be permeable for water drainage purposes.

floors.  There was no similar list for outside inspections, including the gravel area.

Five employees, including Wile, were working on the day of the accident.[6]  Also among those working on the day of the accident was an employee named Jason Bowman.  In his deposition he testified that, on an "average day," he went outside the store about every fifteen minutes, while helping customers, and inspected the sidewalk for the presence of river stones on those occasions.  According to Wile, Bowman was "at the register with [Wile]" at the time of the accident.  Bowman likewise testified that he was working the cash register that day, and that business was "steady."  The record furnishes no guidance whether, or (if at all) how often, Bowman left the register to inspect the sidewalk for river stones on the day of the accident.[7]

After the plaintiff fell, her father went into the store and asked Bowman to provide assistance.  Bowman went outside, where he found the plaintiff on the ground and initially attempted to help her get up.  After realizing that the

---

[6] During the winter months, when the store was less busy, it usually had seven to ten employees working daily, according to Wile.  The store consists of a showroom of about 4,000 square feet, and a warehouse, closed to the public, of about 7,000 square feet.

[7] The deposition transcript of Bowman included in the record presents only excerpts of Bowman's testimony.

plaintiff was injured, and recalling that store policy was to inform a supervisor of an accident, Bowman went back inside the store to retrieve Wile.[8]

Wile went outside and spoke with the plaintiff, who stated that she could not stand and needed help.  Wile went back inside the store and returned with a stool for the plaintiff.  Wile then called 911 from her cellular telephone.

According to Wile, when they were waiting for the ambulance to arrive, the plaintiff stated that she had stepped on a rock, started to trip, crossed her leg in an attempt to catch herself, but then fell on her hip.  Wile then returned to the store to retrieve a notepad on which to write down the plaintiff's name and information.  When she returned, Wile obtained the plaintiff's contact information and gave the plaintiff her card. An ambulance then came to transport the plaintiff to the hospital.  Wile "took the [river stone] and taped it onto a piece of paper and put it in [her] desk drawer."  She then "went out and noted any pebbles [on the sidewalk] and kicked them back onto the [gravel] area."

Discussion.  As we observed in the introduction, in Sheehan, 448 Mass. at 782-791, the Supreme Judicial Court adopted the mode of operation approach to premises liability, in

_____

[8] Once Bowman retrieved Wile, he remained inside the store.

a departure from the "traditional approach."[9]  The court

introduced the doctrine by observing that it modifies how the

notice requirement of premises liability is met:

> "Under the mode of operation approach, the plaintiff's
> burden to prove notice is not eliminated.  Instead,
> the plaintiff satisfies the notice requirement if he
> establishes that an injury was attributable to a
> reasonably foreseeable dangerous condition on the
> owner's premises that is related to the owner's self-
> service mode of operation."

> Id. at 786.

To explain its decision to adopt the mode of operation

approach, the court observed that modern merchandising

techniques often call for customers to engage in "self-service"

activities (in circumstances where store employees previously

might instead have assisted them).  See id. at 784.  The use of

self-service operations in turn carries with it the foreseeable

risk that customer carelessness could give rise to spillage and

breakage that could cause dangerous conditions in the store

premises -- in contrast to store employees who generally would

be expected to be more careful and, in any event, act under the

supervisory oversight of their employer.  See id. at 784-785.

However, the court was explicit that its rationale was based on

---

[9] Under the traditional approach, a landowner is liable for injuries caused by dangerous conditions on his property if the owner knows or should know of an unreasonable risk of harm, visitors will not discover the danger or protect themselves, and the landowner fails to exercise reasonable care to protect them. See Sheehan, supra at 782, quoting from Restatement (Second) of Torts § 343 (1965).

the foreseeable likelihood that hazards could result from the owner's self-service mode of operation, and that such "conditions may include, but are not limited to, spilled foreign substances or fallen matter."  Id. at 786 n.6.

In allowing the defendant's motion for summary judgment, the motion judge suggested that applying the mode of operation approach to the circumstances of the plaintiff's injury would constitute an extension of the doctrine beyond the "spillage and breakage" paradigm involved in Sheehan,[10] and our dissenting colleague presses a similar suggestion.  To the contrary, however, in our view the attempt to limit application of the mode of operation approach to spillage and breakage of products offered for sale (and, thereby, to limit Sheehan to its facts) is at odds both with the court's explanation of its holding, see ibid., and with the fundamental tort principles on which the mode of operation approach is based.[11]

---

[10] In so doing, the motion judge cited a number of other cases decided in the Superior Court that similarly limited the mode of operation approach to dangerous conditions caused by spillage or breakage of products offered for sale.  That articulation of the limitation -- that the risk derive not simply from spillage or breakage but that the spillage or breakage be of a product offered for sale -- imposes an even further restriction of the doctrine beyond the limitation expressly disclaimed by the court in its opinion.

[11] For another recent discussion of basic tort principles in the evaluation of a judicially formulated rule of convenience, see Papadopoulos v. Target Corp., 457 Mass. 368, 370-378 (2010), citing Sheehan, 448 Mass. at 791-792, in support of abrogating

To return to first principles, "[a] landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk."  Mounsey v. Ellard, 363 Mass. 693, 708 (1973), quoting from Smith v. Arbaugh's Restaurant, Inc. 469 F.2d 97, 100 (D.C. Cir. 1972).  The foreseeability of potential danger is an essential limiting characteristic, as is the opportunity of the landowner to take reasonable steps to mitigate the risk to visitors.  See Mounsey v. Ellard, supra at 708-709.  See also Sheehan, 448 Mass. at 783-784.  Accordingly, under the traditional approach, a store owner was held liable for injuries occurring on his premises only if he had "actual or constructive notice of the existence of the dangerous condition, [and] sufficient . . . time . . . to remedy the condition."  Id. at 784.

The rationale for adoption of the "modern" mode of operation approach was simple:  in circumstances where store owners invite customers to use "self-service" to manipulate merchandise displays, there is a foreseeable risk that customers' handling of merchandise or displays will cause disruption of the store's arranged display, to the end that

---

the rule that a property owner cannot be liable for a natural accumulation of snow or ice.

hazardous conditions will result. See id. at 784-786. Put another way, "the owner of such a self-service establishment has actual notice that his mode of operation creates certain risks of harm to his customers. Since a self-service operation involves the reasonable probability that these risks will occur, these risks are foreseeable." Id. at 786, quoting from Pimentel v. Roundup Co., 100 Wash.2d 39, 43 (1983).[12]

We acknowledge that Sheehan, supra at 781, itself, involved an injury caused by an item (a grape) that apparently fell from a self-service display to the supermarket floor before a customer slipped on it. However, under the rationale supporting the mode of operation approach, it should not matter whether the item that migrates from the self-service display to the floor (thereby causing a slipping hazard) is a grape or a quantity of shaved ice from the bed keeping the grapes cool. The distinction drawn by the motion judge between items offered for sale and other hazards foreseeably occurring as a result of the store's use of a self-service mode of operation accordingly should make no difference in the applicability of the mode of operation approach. Moreover, as we have observed, the Supreme

---

[12] In adopting the mode of operation approach, the Supreme Judicial Court also observed that several jurisdictions, while declining to adopt the mode of operation approach, nonetheless take account of "recurrent" risks in assessing whether a property owner should have known that a condition resulting from its regular operations posed a risk of injury to customers. See Sheehan, supra at 789.

Judicial Court explicitly cautioned that its adoption of the mode of operation was not limited to "spilled foreign substances or fallen matter." Sheehan, 448 Mass. at 786 n.6.

Returning to the facts of the instant case, on the summary judgment record it is undisputed that the gravel area, the source of the stone causing the plaintiff's injury, was a self-service area used for the display and sale of store merchandise, including large items, the manipulation of which foreseeably could (and often did) cause stones to move onto the sidewalk, creating a risk of tripping or falling. In our view, it is accordingly an appropriate circumstance for application of the mode of operation approach.

Of course, application of the mode of operation approach does not alone establish liability of the landowner. It remains for the plaintiff to prove that "an ordinarily prudent person in the defendant's position would have taken steps, not taken by the defendant, to prevent the accident that occurred." Id. at 790-791, quoting from Toubiana v. Priestly, 402 Mass. 84, 88-89 (1988). On this question, the summary judgment record is inconclusive. Though the motion judge treated as established fact that every store employee was instructed to inspect the sidewalk for river stones, and that one employee (who was working on the day of the accident) conducted such an inspection every fifteen minutes, the record is less conclusive than that.

As we have observed, the store had no formal policy in place concerning inspection of the outdoor sidewalks. Moreover, Bowman (the store employee who described making such inspections every fifteen minutes) described his practice in general terms, on an average day. He offered no testimony that he made any such inspections on the day of the accident, and we note that he was working the cash register that day, with a "steady" flow of customers past his register. We also note that (according to Wile) the store was staffed with only five employees, compared to a typical staffing complement on slow winter days of seven to ten employees. See note 6, supra. In short, on the summary judgment record there remains a genuine issue of material fact as to whether the store took adequate steps to address the risk posed by the inadvertent transfer of river stones from the gravel area onto the adjacent sidewalk. Though the burden to prove that the store failed to take adequate protective measures remains with the plaintiff, the defendant has not shown, on the present summary judgment record, that the plaintiff has no reasonable expectation of meeting her burden at trial. See Kourouvacilis v. General Motors Corp., 410 Mass. at 714.

Conclusion. The judgment dismissing the plaintiff's complaint and the order denying the plaintiff's motion to vacate the judgment are reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.

KANTROWITZ, J. (dissenting).  When granting summary judgment, the motion judge noted that the mode of operation approach adopted by the Supreme Judicial Court in Sheehan v. Roche Bros. Supermarkets, Inc., 448 Mass. 780, 788 (2007) (Sheehan), had thus far been applied routinely to "spillage and breakage" cases, or in cases where a plaintiff was injured by a product or an item that was available for customers to pick up and carry around the store.  The river stone in this case was not a product for sale, or an item intended for customers to pick up and carry, but rather part of the exterior design of the defendant's store.  The majority's application of the mode of operation approach to these facts is an unnecessary expansion of that approach, needlessly broadening the field.  Perhaps of equal significance, regardless of the approach used, summary judgment was appropriate.

In Sheehan, the Supreme Judicial Court cited several cases that illustrated the context of, and support for, the court's decision.  Here, the majority decision stands in stark contrast to the cases cited by the Supreme Judicial Court.  Notably, the cases cited in Sheehan supporting the mode of operation approach involved business establishments that invited customers to pick up and carry products in or around the store, with a plaintiff injured by a product that was capable of being handled and conceivably purchased.  See Tom v. S.S. Kresge Co., 130 Ariz.

30, 31 (1981) (customer slipped on clear liquid substance in self-service store that sold primarily dry goods but also soft drinks capable of being carried around store); Chiara v. Fry's Food Stores of Ariz., Inc., 152 Ariz. 398, 399 (1987) (customer slipped on creme rinse at self-service store); Safeway Stores, Inc. v. Smith, 658 P.2d 255, 256 (Colo. 1983) (customer in self-service grocery store slipped on substance that appeared to be hand lotion); Meek v. Wal-Mart Stores, Inc., 72 Conn. App. 467, 469 (2002) (customer hit by boxed aluminum tables that fell from shelf in self-service retail store); Gump v. Walmart Stores, Inc., 93 Haw. 428, 433 (Ct. App. 1999) (customer slipped on french fry in self-service store that contained a restaurant), aff'd in part and rev'd in part on other grounds, 93 Haw. 417 (2000); Jackson v. K-Mart Corp., 251 Kan. 700, 701 (1992) (customer in clothing section of self-service department store, which sold avocado juice at store cafeteria, slipped and fell on green liquid that was apparently avocado juice); Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 428 (1966) (customer in vegetable section of self-service supermarket slipped and fell on string bean); Canfield v. Albertsons, Inc., 841 P.2d 1224, 1225 (Utah Ct. App. 1992) (customer in produce department of self-service store slipped on lettuce leaf); Pimentel v. Roundup Co., 100 Wash.2d 39, 41 (1983) (customer at self-service

department store was hit on foot by can of paint that fell from shelf).

Each of these cases involved a customer or visitor injured by a product for sale, or an item intended to be picked up and carried, within a self-service store.  Here, in contrast to the cases cited in Sheehan and Sheehan itself, the object that caused the plaintiff's injury was not an item for sale that a customer could conceivably purchase from the store or an item that the store invited customers to pick up and carry, within its "self-service mode of operation."  Sheehan, 448 Mass. at 786.

The approach adopted in Sheehan applies if a plaintiff's injury is attributable to a "reasonably foreseeable dangerous condition on the owner's premises that is related to the owner's self-service mode of operation."  Ibid. (emphasis supplied). Until now, no published opinion from this court or the Supreme Judicial Court (or apparently the Superior Court) has held that this approach applies to hazards on a store's premises resulting from anything other than an item that the store owner conceivably intended for customers to pick up and carry around (hence the phrase "self-service" as it appears in the Sheehan opinion).

Under the majority's expansive application of this approach, however, almost any potential hazard can be "related

to" a defendant's self-service mode of operation. Ibid. Removal of the limits on the application of the mode of operation approach, which lower courts have followed until this point, will potentially expose self-service businesses in Massachusetts to premises liability not envisioned by the Sheehan court, because everything within such businesses is conceivably related to their mode of operation under the majority's new application of the approach.

A further problem with the majority's holding is that even assuming that the mode of operation approach should apply, summary judgment for the defendant was still appropriate, as the motion judge explained. The mode of operation approach only provides plaintiffs with a different (and less burdensome) method for proving the notice element. See id. at 790. A plaintiff must still demonstrate that the defendant acted unreasonably. See ibid. Here, the plaintiff is unable to make such a showing.

The motion judge properly found that the plaintiff had no reasonable expectation of proving at trial that the defendant breached a duty of care, even assuming that the mode of operation approach applied. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The plaintiff produced no affirmative evidence that a reasonable jury could use to infer that the store was negligent. See Godbout v.

Cousens, 396 Mass. 254, 261 (1985) (nonmoving party may not rest upon mere allegations or denials, but must respond with specific facts); Pederson v. Time, Inc., 404 Mass. 14, 17 (1989) (once party moving for summary judgment establishes absence of triable issue, burden shifts to nonmoving party to offer affirmative evidence). See also Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). Mere assertions that the defendant's evidence should not be believed is not affirmative evidence sufficient to withstand summary judgment. See Godbout v. Cousens, supra at 261-262. The bare fact that an accident occurred is not proof of negligence. See, e.g., Tamagno v. Conley, 322 Mass. 218, 219 (1948) ("The mere fact that the accident happened is of course no evidence of the defendant's negligence").

At their depositions, the defendant's employees testified on the store's practice of inspecting the sidewalk and pushing back any river stones that escaped from the gravel area. In contrast, the plaintiff merely argues that a jury could disbelieve these accounts of the employees' inspection efforts and find in her favor. Arguing that a fact finder could theoretically disbelieve a witness at trial is not affirmative evidence. See Boston v. Santosuosso, 307 Mass. 302, 349 (1940)

("[A]s has been pointed out many times, disbelief of evidence is not the equivalent of affirmative evidence to the contrary").[1]

The plaintiff has provided no affirmative evidence, for example, that store employees failed to inspect the sidewalk on the day of her accident, or that the employees who were supposed to inspect the sidewalk as part of their duties neglected to take proper care and unreasonably allowed a hazardous condition to exist on the sidewalk. She provided no evidence that demonstrated that the river stone on which she fell had been on the sidewalk for an unreasonable amount of time. The mere fact that she fell on a river stone is not evidence of the store's alleged negligence. See Tamagno v. Conley, supra.

In contrast, the defendant's evidence showed that reasonable efforts were made to inspect the sidewalk, including a general practice of inspecting the outside area for safety. The defendant also showed that employee Bowman, who was working on the day of the accident, usually checked the sidewalk for river stones every fifteen minutes. If there were evidence that

---

[1] Indeed, juries are routinely instructed: "If you do not believe a witness's testimony that something happened, of course your disbelief is not evidence that it did not happen. When you disbelieve a witness, it just means that you have to look elsewhere for credible evidence about that issue." Massachusetts Superior Court Civil Practice Jury Instructions § 1.2.8 (Mass. Cont. Legal Ed. 3d ed. 2014). See Criminal Model Jury Instructions for Use in the District Court, Instruction 2.260 (Mass. Cont. Legal Ed. 2009) (same).

these employees neglected their duties that day, the plaintiff needed to place such evidence before the motion judge.

As the plaintiff produced no such evidence, the judge properly found that there were no genuine issues for trial because the plaintiff could not prove that the store acted improperly.  See Flesner v. Technical Communications Corp., 410 Mass. at 809.  Viewing the evidence in the light most favorable to the plaintiff, the defendant was entitled to judgment as a matter of law, even assuming that the mode of operation approach applied.  See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

Because the majority's decision expands the application of the mode of operation approach, and because summary judgment was properly granted in any event, I respectfully dissent.