Duffly, J.
In this case we are called upon to determine whether the “mode of operation” approach to premises liability, see Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 683 (2015) (Sarkisian), and Sheehan v. Roche Bros. Supermkts., Inc., 448 Mass. 780, 788 (2007) (Sheehan), is applicable with respect to the operation of a garden store. The plaintiff, Linda Bowers, suffered a displaced fracture of her right hip after she slipped and fell on a walkway leading into a Cape Cod garden store owned by the defendant, P. Wile’s, Inc., doing business as Agway of Cape Cod (Agway). Agway maintains what the parties refer to as a “gravel area” near the concrete walkway leading into the store, where landscaping items are displayed for sale. Customers may enter the gravel area, which consists of small stones less than one inch in diameter,[3] and shop for products displayed there without assistance from any Agway employee.
After she fell on Agway’s premises, Bowers hied a complaint in the Superior Court asserting that she tripped on a stone that had migrated from the gravel area to the walkway, and that Agway knew that the movement of the stones from the gravel area created a risk of tripping on the walkway, but failed to take reasonable steps to mitigate that risk. Agway moved for summary judgment, arguing that, under the traditional theory of premises liability, where a foreign object is temporarily on a defendant’s premises, Bowers would be required to prove Agway’s actual or constructive notice of the presence of the stone on the walkway, which she concedes she is unable to do, because she does not know how the stone came to be on the walkway, nor how long it *36 had been there when she tripped and fell. See Sheehan, 448 Mass. at 782-783, citing Restatement (Second) of Torts § 343 (1965).
Bowers argued that, notwithstanding an inability to prevail under a traditional theory of premises liability, she could prevail by applying a mode of operation analysis. Bowers contends that, under this approach, she could establish that Agway had notice that the stone was present because Agway uses a self-service gravel area as part of its daily operation, and was aware that customers walking in the area to pick up items for purchase might dislodge stones onto the walkway.[4] See Sheehan, supra.
Concluding that the mode of operation approach is not applicable in these circumstances, a Superior Court judge granted Agway’s motion for summary judgment. In a divided opinion, the Appeals Court reversed. See Bowers v. P. Wile’s, Inc., 87 Mass. App. Ct. 362, 363 (2015). We allowed Agway’s motion for further appellate review, and conclude that the mode of operation analysis is applicable in the circumstances here.[5]
1. Background. We recite the undisputed facts from the summary judgment record, viewed in the light most favorable to the nonmoving party. See LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316, 318 (2012); Mammone v. President & Fellows of Harvard College, 446 Mass. 657, 659-660 (2006). On a December afternoon in 2011, Bowers went to one of Agway’s garden stores on Cape Cod to shop. She approached the store on a walkway that runs between the parking lot and the store. The six-foot wide gravel area, made up of “river stones,” is adjacent to this walkway. Agway displays landscaping merchandise for sale in this area, and customers may help themselves to products there.[6] While walking on the walkway adjacent to the gravel area, *37 Bowers tripped on one of the stones that apparently had migrated onto the walkway; she did not see the stone before she fell. As a result of the fall, Bowers suffered a displaced fracture of her right hip that required two surgical repairs. Immediately after Bowers fell, an Agway employee, who had come outside to assist her, kicked several stones from the walkway into the gravel area.
Agway had installed the gravel area as part of its installation of a porch addition to the front of the garden store. Although Agway considered planting grass in this area, it instead chose to use gravel. The gravel area had been in place for fifteen years without any previous complaints of a customer having fallen due to the presence of the stones. Nonetheless, prior to Bowers’ fall, Agway was aware that stones could be dislodged by people walking in the gravel area, and could end up on the walkway, creating a potential tripping hazard.[7] As a result, Agway had developed a practice of having employees inspect the walkway to make sure that it was free of stones. The practice was informal, and there was no set schedule under which employees were to check the walkway. Rather, employees would check the walkway throughout the day, as they went outside to assist customers, or for other reasons during the course of their work.
2. Discussion. We review a decision on a motion for summary judgment de novo. See LeBlanc v. Logan Hilton Joint Venture, 463 Mass. at 318. Summary judgment for the defendant is not appropriate if “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff [as the nonmoving party]” (citation omitted). Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). Ordinarily, questions of negligence are for the trier of fact; only when no rational view of the evidence would warrant a finding of negligence is the question appropriate for summary judgment. See Petrell v. Shaw, 453 Mass. 377, 381 (2009).
A business owes a “duty to a paying patron to use reasonable care to prevent injury to him by third persons,” Sweenor v. 162 State St., Inc., 361 Mass. 524, 526 (1972), and “to keep [its] premises in a reasonably safe condition for [its] visitors’ use.” Jaillet v. Godfried *38 Home Bakeries, Inc., 354 Mass. 267, 268 (1968), quoting LeBlanc v. Atlantic Bldg. & Supply Co., 323 Mass. 702, 705 (1949). To find a retail store liable for a plaintiffs injuries incurred as a result of a dangerous condition on the premises not caused or created by the store, a jury must find that the store (1) knew of, or, by exercise of reasonable care would have discovered, the dangerous condition; (2) the condition created an unreasonable risk of harm; (3) the store could not have expected the plaintiff to discover or protect herself against the potential harm; and (4) the store failed to exercise reasonable care to protect the plaintiff. See Deagle v. Great Atl. & Pac. Tea Co., 343 Mass. 263, 264-265 (1961).
Here, it is undisputed that Agway owns the walkway on which Bowers fell, and owed her a duty of “reasonable care” with respect to its condition. See Papadopoulos v. Target Corp., 457 Mass. 368, 372 (2010). This case revolves around the extent to which Agway had notice of a potentially hazardous, temporary condition created by a stone that had migrated to the walkway. See Sarkisian, 471 Mass. at 684.
Under the traditional approach to premises liability, a plaintiff can establish that a business had actual or constructive notice of a temporary hazard. Constructive notice can be established by evidence indicating the length of time the hazard was on the walkway. See Oliveri v. Massachusetts Bay Transp. Auth., 363 Mass. 165, 166 (1973). Using this analysis, Bowers would be required to establish notice by showing that Agway (1) put the stone on the walkway, (2) knew it was on the walkway, or (3) had constructive knowledge that the stone was on the walkway because such notice could be established where, based on the length of time the stone had been on the walkway, Agway should have discovered it. See id.
Bowers does not assert that Agway placed the stone on the walkway. She also does not suggest that she has any knowledge of how long the stone was on the walkway. Accordingly, under the traditional theory of premises liability, Bowers cannot establish Agway’s actual or constructive knowledge of the presence of the stone on the walkway, because she cannot show that Agway had sufficient time to become aware of and remedy the condition. See Gallagher v. Stop & Shop, Inc., 332 Mass. 560, 563 (1955). Bowers argues, however, that her claim should be viewed under the mode of operation approach, and that, under such an approach, summary judgment should not have been granted.
a. Scope of mode of operation approach. The mode of operation approach recognizes that a proprietor’s manner of operation *39 can create foreseeable hazards that might arise through the actions of third parties, thus obligating the proprietor to take all reasonable precautions necessary to protect against those foreseeable hazards.[8] Sheehan, 448 Mass. at 786. Under this analysis, a plaintiff may survive a motion for summary judgment by establishing that a business reasonably should have anticipated that “its chosen method of operation [would] regularly invite third-party interference resulting in the creation of unsafe conditions,” and that the plaintiff was injured “after encountering the condition so created.” Sarkisian, 471 Mass. at 684, citing Sheehan, supra at 791. Whether an entity’s mode of operation makes a dangerous condition reasonably foreseeable ordinarily is a question for the finder of fact. See Massachusetts Superior Court Civil Practice Jury Instructions § 2.3.8 (Mass. Cont. Legal Educ. 3d ed. 2014).
The mode of operation approach “removes the burden on the victim of a slip and fall to prove that the owner or the owner’s employees had actual or constructive notice of the dangerous condition or to prove the exact failure that caused the accident.” Sheehan, supra at 790. Instead, a “plaintiff satisfies the notice requirement if he establishes that an injury was attributable to a reasonably foreseeable dangerous condition on the owner’s premises that is related to the owner’s . . . mode of operation.” Id. at 786. Cf. Jackson v. K-Mart Corp., 251 Kan. 700, 702, 709 (1992) (mode of operation approach “looks to a business’s choice of a particular mode of operation and not events surrounding the plaintiff’s accident,” and permits customer to recover for injuries “due to a condition inherent in the way the store is operated” [citation omitted]). The approach developed as a means of addressing cases in which an entity’s manner of operating its business makes the regular occurrence of dangerous conditions caused by customer action reasonably foreseeable, but where an injured customer often would be unable to obtain relief for an injury stemming from such foreseeable conditions under traditional premises liability, which requires “notice of the specific dangerous condition itself and not... general notice of conditions producing the dangerous condition.” See Chiara v. Fry’s Food *40 Stores of Ariz. Inc., 152 Ariz. 398, 400 (1987) (“person injured in a supermarket will rarely be able to trace the origins of the accident”).
The mode of operation approach is based on the theory that customers interacting with products for sale, without the assistance of store employees,
“generally may not be as careful and vigilant as a store owner because customers are not focused on the owner’s concern of keeping items off the floor to avoid potential foreseeable risks of harm to other patrons. . . . [I]t [would be] ‘unjust to saddle the plaintiff with the burden of isolating the precise failure’ that caused an injury, particularly where a plaintiff’s injury results from a foreseeable risk of harm stemming from an owner’s mode of operation.”
Sheehan, 448 Mass. at 784-785, 788. In such circumstances, a store “owner has scarce incentive to act reasonably, because the injured patron will seldom be able to discern the origin of the unsafe condition and, thus, satisfy the notice requirement under the traditional approach to premises liability.” Sarkisian, 471 Mass. at 686. See Golba v. Kohl’s Dep’t Store, Inc., 585 N.E.2d 14, 15 (Ind. Ct. App. 1992). Therefore, where the manner of operation of a business creates a reasonably foreseeable risk of a hazardous condition, the approach permits a plaintiff to recover for injuries resulting from such conditions if the plaintiff establishes that the business did not take all “adequate steps” reasonably necessary under the circumstances to protect patrons against that risk. Sheehan, supra at 790. See Sarkisian, supra at 687. Cf. Jackson v. K-Mart Corp., 251 Kan. at 710-711.
We have emphasized that the mode of operation approach “does not make the owner of a self-service . . . store an insurer against all accidents.” See Sheehan, 448 Mass. at 790. The approach does not eliminate the other elements of premises liability; a plaintiff is “still required to prove that the defendant failed to take reasonable measures commensurate with the risks involved ... to prevent injury” and “that the defendant acted unreasonably” in the circumstances. Id. at 786-787. Indeed, “nearly every business enterprise produces some risk of customer interference,” and, in the absence of limiting principles, “[a] plaintiff could get to the jury in most cases simply by presenting proof that a store’s customer could have conceivably] produced *41 the hazardous condition.” Chiara v. Fry’s Food Stores of Ariz., Inc., 152 Ariz. at 400-401.
Accordingly, we have required a plaintiff to establish a ‘“particular” mode of operation that makes the hazardous condition foreseeable,[9] and a ‘“recurring feature of the mode of operation,” rather than one where the risk only ‘“conceivabl[y]” could arise from the mode of operation. See Sarkisian, 471 Mass. at 684, 687. See also Chiara v. Fry’s Food Stores of Ariz., 152 Ariz. at 401; Jackson v. K-Mart Corp., 251 Kan. at 710 (mode of operation approach applies only if commercial entity ‘“could reasonably foresee that the dangerous condition would regularly occur”). In addition, as noted, even where a plaintiff is able to prove notice through a defendant’s mode of operation that a dangerous condition was reasonably foreseeable, that alone does not establish liability. A plaintiff still must establish that the steps the defendant took to protect customers from the condition that resulted in the injury were unreasonable in the circumstances. See Sarkisian, supra at 683-684.
b. Bowers’s mode of operations claim. To succeed in her mode of operation claim, Bowers has the burden to establish that (1) the risk that customers would dislodge stones from the gravel area onto the walkway was reasonably foreseeable; (2) it was reasonably foreseeable that stones lying on the walkway would present a tripping hazard to customers walking on the walkway adjacent to the gravel area; and (3) the steps Agway took to protect customers from the potential hazard of tripping on the stones were unreasonable. Viewed in the light most favorable to Bowers, she has established a genuine question of material fact with respect to each of these issues.
Based on the summary judgment record, there is a disputed question of fact whether Agway’s choice of gravel rather than another, non-mobile surface, such as the grass it had considered for its self-service area, which is adjacent to the walkway leading to the main entrance to the store, represents a ‘“particular” mode *42 of operation of the self-service area that makes the recurring hazard of stones on the walkway, after customers have walked through the self-service area, foreseeable.[10] The store manager testified at deposition that Agway maintained an informal policy of having employees check the walkway whenever an employee was outside assisting a customer in the gravel area, or performing other work, approximately every fifteen minutes, at least in part due to concerns that stones might come to rest on the walkway as a result of customers walking in and around the gravel area.[11] Thus, there is a genuine question of material fact whether the risk of dislodged stones from customers walking in the gravel area in order to look at and select items for purchase was not just a “conceivable” risk, but, rather, a recurring risk created by Agway’s mode of operation. See Sarkisian, 471 Mass. at 684, 687 (deposition testimony of nightclub manager that “spills on the dance floor are part of the business”). Cf. Chiara v. Fry’s Food Stores of Ariz., Inc., supra at 401; Fisher v. Big Y Foods, Inc., 298 Conn. 414, 426-427 (2010).
If a jury were to conclude that Agway’s maintenance of the gravel area was a mode of operation that created a foreseeable risk that customers would dislodge stones onto the walkway, which, according to its manager, Agway viewed as a potential tripping hazard, there would be a further question of material fact whether Agway’s efforts to protect customers from the presence of stones on the walkway were reasonable in the circumstances. The jury then would have to determine whether Agway’s policy of informal but periodic inspection of the walkway by employees, approximately every fifteen minutes, was a reasonable means by which to protect customers from the risk created by the migrating stones.[12] See G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 *43 Mass. 262, 272 (1991).
3. Conclusion. The judgment in favor of the defendant is vacated and set aside, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.

 The parties stipulate that these stones are “river stones,” and are roughly three-quarters inch in size; “river stone” is not otherwise described.

 A self-service operation is one characterized by customers being permitted to take products for sale from displays without employee assistance. See Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 682 (2015) (Sarkisian); Sheehan v. Roche Bros. Supermkts., Inc., 448 Mass. 780, 784-786 (2007) (Sheehan).

 We acknowledge the amicus briefs submitted by the Massachusetts Academy of Trial Attorneys, the Property Casualty Insurers Association of America, and the Massachusetts Defense Lawyers’ Association.

 The dissent describes the gravel area as a walkway that customers may use “to enter the self-service area of the store,” and concludes that “customers’ ability to help themselves to goods . . . did not factor into the condition at issue here.” Post at 45. But, as Agway concedes, and as the judge found, the gravel area is not a walkway leading to a separate self-service area. Rather, as deposition testimony and photographic exhibits establish, the gravel area is in fact a self-service area in which Agway displays items for sale, and which customers may enter to select items for purchase without employee assistance. The *37 items that Agway displays in the gravel area include pottery, shovels, rakes, soil, and mulch, as well as plants in small containers.

 A store manager testified during her deposition that there was a “general consensus” to keep an eye on the gravel area in part because the stones could “create a tripping hazard.”

 See Hetzel v. Jewel Cos., 457 F.2d 527, 530 (7th Cir. 1972), cited in Sheehan, 448 Mass. at 789 (“We believe that proof of constructive notice to a possessor of land of the existence of a dangerous condition is properly accomplished where it is shown that the specific condition at issue, though transitory, is a part of a known and continuing or recurrent condition”).

 Cf. Jasko v. F.W. Woolworth Co., 177 Colo. 418, 420 (1972) (“practice of extensive selling of slices of pizza on waxed paper to customers who consume it while standing creates the reasonable probability that food will drop to the floor”); Fisher v. Big Y Foods, Inc., 298 Conn. 414, 426-427 (2010) (approach triggered by “showing that a more specific method of operation within a self-service retail environment gave rise” to hazardous condition); Pimentel v. Roundup Co., 100 Wash. 2d 39, 49-50 (1983) (approach applies “if the particular' self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable”).

 In a case in which a customer in a home improvement store was injured by a paint can that fell onto her foot from a display of stacked paint cans, for instance, the Washington State Supreme Court concluded that a mode of operation analysis was applicable, because the stacked paint cans overhung the display shelf, and the plaintiff’s expert testified at deposition that the manner in which the can that fell on the plaintiff s foot had been stacked would have made it “extremely unstable” to the point where “the slightest vibration might overbalance it.” See Pimentel v. Roundup Co., 100 Wash. 2d at 41, 49-50.

 As noted, it is undisputed that an Agway employee observed several stones on the walkway when he went to Bowers’ aid after she fell.

 Bowers asserts also that, even if the periodic inspection was reasonable, the record would support a conclusion that the policy was not followed on the day of her injury. If so, that question would be for the fact finder on remand.