While Donna Katin was shopping in a store owned by The Stop & Shop Company, LLC (Stop & Shop), she slipped and fell on an advertising sign that had fallen on the ground. She then brought this negligence action to recover damages for her injuries. A judge granted summary judgment for Stop & Shop, concluding that (1) under the traditional theory of premises liability, Katin could not prove that Stop & Shop had notice of the condition that caused her fall, and (2) the "mode of operation" theory of premises liability was not applicable to her claim. Katin appeals, challenging both rulings. We affirm.
Background. The basic facts are not in dispute. On March 25, 2010, Katin entered a Stop & Shop store and went directly to the area where the bread was sold. There, she slipped on a sign that was lying on the floor face down. Katin had been in the store for less than two minutes when she fell.
The only other person in the area was a male customer, who picked up the sign and showed it to Katin. The side of the sign that had been facing up was completely white and blended in with the color of the floor. The other side had red and blue lettering that resembled the "Wonderbread" logo. Katin observed that the sign was "very clean" with no dirt, footprints, or tire tracks. Nothing about its appearance suggested that it had been on the floor for an unreasonable amount of time.
Katin does not know how the sign ended up on the floor or how long it was there. Nearby, however, there was an empty display frame, which was freestanding, approximately thirty-six inches tall, and made of steel. According to one of the store managers, Louis D'Amato, the construct of the frame would have made it impossible for the sign to fall out on its own.
Accompanied by the male customer, Katin took the sign to the customer service desk and reported the accident. She told a manager she was "fine" and did not contact the store in the weeks that followed, even though the manager provided her with contact information and invited her to call. Nearly three years later, in February of 2013, Katin filed this lawsuit. At some point in that intervening three-year period, Stop & Shop lost or discarded the sign.
Discussion. "We review a decision on a motion for summary judgment de novo." Bowers v. P. Wile's, Inc., 475 Mass. 34, 37 (2016). Although negligence claims ordinarily raise factual issues for the jury, a defendant can still prevail on summary judgment "by demonstrating that the [plaintiff] has no reasonable expectation of proving an essential element of [her] case at trial." Petrell v. Shaw, 453 Mass. 377, 381 (2009). See Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 681 (2015). An essential element of a premises liability claim, and the only one relevant for our purposes, is that the defendant must have had notice of the dangerous condition on the premises. See Bowers, 475 Mass. at 38.
1. Traditional theory. Under the traditional theory of premises liability, and "[w]here the condition consists of spillage on the floor," the notice element is established "if the operator of [the] business 'caused [the] substance, matter, or item to be on the floor; the ... operator had actual knowledge of its presence; or the substance, matter, or item had been on the floor so long that the ... operator should have been aware of the condition.' " Sarkisian, 471 Mass. at 682, quoting from Sheehan v. Roche Bros. Supermkts., Inc., 448 Mass. 780, 782-783 (2007). Katin does not claim that Stop & Shop caused the sign to be on the floor or had actual knowledge of its presence. She does claim, however, that there is a triable issue on whether the condition persisted for so long that Stop & Shop should be charged with constructive knowledge.
While Katin has no direct evidence as to how long the sign was on the floor, there could still be a triable issue if "the physical characteristics" of the sign were such that a jury could infer that enough time had passed for Stop & Shop to become aware of and remedy the condition. Sheehan, 448 Mass. at 784. See Gallagher v. Stop & Shop, Inc., 332 Mass. 560, 563 (1955) (jury could infer that store owner had constructive knowledge of ice cream on floor where "[s]ome appreciable time must have elapsed ... for the ice cream to have gotten into the condition it was in"). The only evidence on this point, however, is Katin's own deposition testimony that the sign was "very clean" with no shoe prints or other marks, which suggests that it was not on the floor for very long. Indeed, Katin conceded below that there was nothing about the sign's physical appearance to indicate that Stop & Shop allowed the condition to persist for an unreasonable amount of time.
Nevertheless, Katin contends that her claim should have gone to the jury because Stop & Shop has a safety and cleanliness policy that requires employees to pick up items that they see on the floor. Based on this policy, she argues, the jury could infer that employees acted carelessly by not "immediately retriev[ing]" the sign. But under the traditional approach to premises liability, store owners are afforded "a reasonable opportunity to discover and correct any hazards before liability attaches." Sheehan, 448 Mass. at 784. Stop & Shop cannot therefore be held liable for its employees' failure to "immediately" pick up the sign; rather, Katin must prove that Stop & Shop had notice that was "sufficient to allow time ... to remedy the condition." Ibid.
Katin further contends that, because Stop & Shop spoliated the sign, she is entitled to an adverse inference instruction of some kind (she does not specify), which would allow a jury to "conclude that the sign remained on the floor for an unreasonable length of time." The problem with this argument is that at no point did Katin demonstrate to the judge that the elements of spoliation were met. In opposing summary judgment, she asserted only summarily that she was entitled to sanctions because Stop & Shop failed to preserve the sign. Sanctions for spoliation do not extend, however, to "a fault-free destruction or loss of physical evidence." Kippenhan v. Chaulk Servs., Inc., 428 Mass. 124, 127 (1998). Instead, they are only appropriate if a party "negligently or intentionally loses or destroys evidence that the [party] ... knows or reasonably should know might be relevant to a possible action." Scott v. Garfield, 454 Mass. 790, 798 (2009). See Kippenhan, 428 Mass. at 127 ("The threat of a lawsuit must be sufficiently apparent ... that a reasonable person in the spoliator's position would realize, at the time of spoliation, the possible importance of the evidence to the resolution of the potential dispute"). Whether the threat of a lawsuit was sufficiently clear, and whether the party negligently or intentionally lost the evidence, involve factual issues that must be decided in the first instance by the judge. See Scott, 454 Mass. at 798. Here, the judge had no occasion to make such findings because Katin did not adequately raise the issues.[2] As a result, we lack any meaningful record on which to consider her claim that she is entitled to an adverse inference instruction.
Furthermore, the judge did address one element of spoliation-whether the nonspoliating party was prejudiced by the loss or destruction of evidence, see Keene v. Brigham & Women's Hosp., Inc., 439 Mass. 223, 235 (2003) -and determined that Katin failed to demonstrate prejudice. We discern no abuse of discretion in this determination. As the judge found, no prejudice resulted from the loss of the sign because "the sign itself is not the only evidence of its condition at the time Katin fell"; "[t]here is also Katin's own testimony as to the sign's clean, white condition." Katin contends that this was error because, if she had the sign itself, she might be able to show that "it was resistant to track marks or dirt." But even then, she still would have no affirmative evidence that the sign was on the floor long enough for Stop & Shop to have discovered and removed it. We therefore agree with the judge that Katin has no reasonable expectation of proving actual or constructive notice under the traditional theory of premises liability.
2. Mode of operation theory. The mode of operation theory of premises liability "refine[s] the ... notice requirement in a narrow subset of premises liability cases" involving "harms caused by third parties, e.g., other business visitors." Sarkisian, 471 Mass. at 683. The theory developed largely as a means of addressing "the change in grocery stores from individualized clerk-assisted to self-service operations," Sheehan, 448 Mass. at 784, but has since been expanded outside of the self-service context. See Sarkisian, 471 Mass. at 683-685. In a case where the theory is applicable, the plaintiff need not prove actual or constructive notice, but instead "satisfies the notice requirement if [s]he establishes that an injury was attributable to a reasonably foreseeable dangerous condition on the owner's premises that is related to the owner's [chosen] mode of operation." Sheehan, 448 Mass. at 786.
Although Katin does not know how the sign ended up on the floor, the evidence, viewed in the light most favorable to her, creates a reasonable inference of third-party interference. In particular, D'Amato's testimony that the sign could not have fallen out of the frame on its own supports an inference that a customer either intentionally or inadvertently removed the sign from the frame. But mere "proof that a store's customer could have conceivably produced the hazardous condition" does not get Katin to the jury; after all, "nearly every business enterprise produces some risk of customer interference." Sarkisian, 471 Mass. at 684, quoting from Chiara v. Fry's Food Stores of Ariz., Inc., 152 Ariz. 398, 400-401 (1987). To survive summary judgment, Katin has the more onerous burden of showing that Stop & Shop employed "a 'particular' mode of operation that ma[de] the hazardous condition foreseeable, and a 'recurring feature of the mode of operation,' rather than one where the risk only 'conceivabl[y]' could arise from the mode of operation" (footnote omitted). Bowers, 475 Mass. at 41, quoting from Sarkisian, 471 Mass. at 684, 687. See Sarkisian, 471 Mass. at 684 (mode of operation approach is limited "to situations where a business should reasonably anticipate that its chosen method of operation will regularly invite third-party interference resulting in the creation of unsafe conditions").
Katin argues that she met her burden because Stop & Shop's "use of the freestanding sign to advertise items for sale on its self-service shelves created a foreseeable risk that customers would knock over or break the sign." We will assume, without deciding, that a relationship exists between the occurrence of the unsafe condition and Stop & Shop's self-service mode of operation. See Sheehan, 448 Mass. at 791 (dangerous condition must be foreseeable and "result[ ] from" proprietor's chosen mode of operation).[3] Even with that assumption, Katin's claim cannot withstand summary judgment because she has no reasonable expectation of proving that the condition was a "recurring feature of the mode of operation." Sarkisian, 471 Mass. at 687. See Bowers, 475 Mass. at 41.
Sarkisian is instructive in this regard. There, the plaintiff slipped and fell on a wet dance floor in a nightclub. See 471 Mass. at 681. The dance floor had two bars from which patrons could purchase drinks served in plastic cups. See ibid. They were then permitted to consume their drinks on the dance floor itself or in a lounge area, which was accessible by stairs at the rear of the dance floor. See ibid. On these facts the Supreme Judicial Court concluded that the mode of operation approach applied to the plaintiff's claim, but was careful to note that she would not have survived summary judgment had she shown only that the nightclub "sells drinks to patrons who are then allowed to travel about the premises." Id. at 687. What allowed her to get to the jury was the additional evidence "that patrons who wish to travel between the bar and their seats are forced-as a recurring feature of the mode of operation-to navigate in the dark through a crowd of dancing people holding plastic cups filled with liquid over a wooden floor." Ibid. While "[s]pillage is conceivable in either circumstance," the dispositive inquiry, the court held, is whether "the regularity of such spillage [is] tied to the mode of operation in a manner that justifies placing the business on notice of the resulting unsafe condition." Ibid.
Here, there is no evidence that Katin's injury resulted from a condition occurring with a "regularity" "tied to" Stop & Shop's self-service model. It is certainly conceivable that a customer might interfere with advertising signs, just as it is conceivable that a bar patron might spill a drink while walking around the premises. But Katin has not presented any evidence from which a reasonable jury could find that fallen signs were a recurring feature of the way Stop & Shop operated. Unlike in Sarkisian, Stop & Shop's mode of operation did not create an inherent risk of the unsafe condition. Furthermore, Katin offered no evidence to contradict D'Amato's deposition testimony that the store had experienced no previous incidents of a sign falling out of its frame. Cf. ibid. (nightclub manager testified in deposition that "spills on the dance floor are part of the business").
In her brief Katin relies heavily on Bowers, which, like Sarkisian, was decided after the judge issued his order in this case. But in Bowers, there was evidence that the store owner "was aware that stones could be dislodged by people walking in the gravel area, and could end up on the walkway, creating a potential tripping hazard." 475 Mass. at 37. In particular, the record there contained deposition testimony from the store manager that the store had a "policy of having employees check the walkway whenever an employee was outside assisting a customer in the gravel area, or performing other work, approximately every fifteen minutes, at least in part due to concerns that stones might come to rest on the walkway as a result of customers walking in and around the gravel area." Id. at 42. In light of this testimony, the Supreme Judicial Court determined that there was "a genuine question of material fact whether the risk of dislodged stones from customers walking in the gravel area in order to look at and select items for purchase was not just a 'conceivable' risk, but, rather, a recurring risk created by [the store's] mode of operation." Ibid.
This case presents no such material factual dispute. Instead, the summary judgment record, even when viewed favorably to Katin, establishes at best that there was a conceivable risk that a customer would interfere with the sign and cause it to fall on the ground. Proof of only a conceivable risk does not get Katin to the jury. See Sarkisian, 471 Mass. at 684 ; Bowers, 475 Mass. at 41.
Judgment affirmed.

For example, the judge had no occasion to decide whether the threat of litigation was so clear that Stop & Shop had a duty to preserve the sign for the three-year period between the date of the accident and the filing of this case.

We note, however, that this is not a case like Sheehan or Sarkisian, where the unsafe condition resulted from spillage of a product that the proprietor intended for customers to handle or carry around the business establishment. See Sheehan, 448 Mass. at 781-782 (grapes that fell from display table); Sarkisian, 471 Mass. at 682, 685-686 (spilled drinks on dance floor). This case is also distinguishable from Bowers, where the unsafe condition-dislodged stones from a gravel area-resulted from the store's invitation to customers to walk through the gravel area, unassisted by store employees, to shop for products on display there. See 475 Mass. at 36 n.6, 41-42. Here, the sign was not for sale or intended to be handled by customers, and no evidence exists that the risk of it falling was created, or exacerbated, by customers helping themselves to products on the shelves. In other words, as the judge observed, the record does not establish that the risk of a fallen advertising sign is any greater in a self-service store than in other business establishments (such as banks and post offices) that also serve customers and advertise products.